## SHOENBERG v. BURNET, Commissioner of Internal Revenue.

### No. 5219.

Court of Appeals of District of Columbia.

Argued Nov. 5, 1931.

Decided Dec. 28, 1931.

James W. Beller, of Washington, D. C., and Claude E. Koss, of New York City, for appellant.

C. M. Charest, Dean P. Kimball, S. Dee Hanson, and Sewall Key, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal under section 1002 (d) of the Revenue Act of 1926 (26 USCA § 1225 (d), from a decision and order of redetermination of the United States Board of Tax Appeals.

It involves income taxes for the year 1923, amounting to $35,361.20.

On January 23, 1923, the appellant, hereinafter called the taxpayer, was given by his father 1,820 shares of the common stock of the May Department Stores Company, which he sold the same day for $132,860.

The stock had been purchased by the father, Moses Schoenberg, prior to March 4, 1918, for $30,454.06, and held by him until given to the son.

The difference between the purchase price paid by the father and the sale price received by the son being taxable to the son as gain under section 202 (a) (2) of the Revenue Act of 1921 (chapter 136, 42 Stat. 227), the taxpayer contends he is entitled to compute his tax under the beneficial provisions of section 206 (b) of the act.

That section reads as follows:

"In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 210 and 211 of this title, a tax determined as follows:

"A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain; but if the taxpayer elects to be taxed under this section the total tax shall in no such case be less than 12½ per centum of the total net income. The total tax thus de-

544

termined shall be computed, collected and paid in the same manner, at the same time and subject to the same provisions of law, including penalties, as other taxes under this title."

The taxpayer contends that his gain made taxable by section 202 (a) was "capital net gain" under section 206 (a) (4) from "capital gain" under 206 (a) (1) derived from "capital assets" as intended to be defined by section 206 (a) (6), and therefore he is entitled to the benefits of section 206 (b).

The difficulty in maintaining this position is that the act of 1921, divided as it is into different sections, dealing with different matters and situations, does no more by section 202 (a) (2) than say that he shall pay a tax on the difference between what his donor paid for the stock and the sale price thereof.

The percentage of tax thereon is prescribed by the later sections 210 and 211.

But section 206 comes between, and offers an alternative method of computing the tax to any individual taxpayer who for any taxable year derives a capital net gain (b).

And it does more. It contains its own definition of "capital net gain" as being the excess of the total amount of "capital gain" over the sum of the capital deductions and capital losses. Section 206 (a) (4).

And it also contains its own definition of "capital gain" as being taxable gain from the sale or exchange of "capital assets." Section 206 (a) (1).

While its sixth and final definition is that of "capital assets" as property acquired and held by the taxpayer for profit or investment for more than two years. Section 206 (a) (6).

By that definition, Congress indicated a purpose to benefit by 206 (b) only taxpayers (other than corporations) who, having acquired property, held it for profit or investment for more than two years.

And a purpose was also indicated thereby to exclude from such benefits corporations and holders of property for a shorter period than two years.

The taxpayer having held his stock less than a day does not come within the provisions of section 206 (b) unless, as he claims, he is entitled to rely on the time his donor held it before him, and stand in his donor's shoes.

This he claims the right to do on the theory that the price paid for the stock by his donor having been made the basis for determining the taxable gain by section 202 (a) (2), the time held by donor having contributed to its increase in value, and the tax having devolved on him instead of his donor, Congress intended that he should have the benefits of section 206 (b).

He suggests that his donor could have availed himself of that section had he sold the stock at the time of the gift and given him the proceeds instead of the stock.

It is true the donor might have done this, and might have benefited thereby, because he would have been in the class intended to be benefited, and in the situation provided for by the statute, but not so the purchaser of the stock, and it is in the shoes of the purchaser rather than of the donor that the taxpayer stands.

This statute was intended to benefit taxpaying vendors, not their vendees or donees, except, possibly, by indirection, in procuring a lower price.

Two things were necessary for its availability to a taxpayer: First, a holding for more than two years; and, second, a sale resulting in a taxable gain to which the statute could apply.

This donor by his donation became neither a vendor making a taxable gain, nor such a taxpayer as the statute contemplates.

He was not entitled to the benefits of section 206 (b), and there was nothing in existence to which that section could apply, or on which it could operate.

Since the donor had no rights under that section for himself, he had none to transmit to his donee, and, since the statute does not otherwise provide a right for the appellant, the decision of the Board of Tax Appeals is affirmed.

Affirmed.