HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* NEW YORK TRUST CO., TRUSTEE.*

No. 873.  Argued May 8, 9, 1934.—Decided May 28, 1934.

*Together with No. 899, *New York Trust Co., Trustee*, v. *Helvering, Commissioner*, certiorari to the Circuit Court of Appeals for the Second Circuit.

456

*Mr. Erwin N. Griswold,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman, Mr. James W. Morris,* and *Miss Helen R. Carloss* were on the brief, for the Commissioner of Internal Revenue.

458

*Mr. Chauncey Newlin,* with whom *Messrs. J. DuPratt White* and *Russell D. Morrill* were on the brief, for the New York Trust Co., Trustee.

460

Mr. Justice Butler delivered the opinion of the Court.

This controversy arises out of the calculation of an income tax on the gain realized on the sale of property by a trustee in 1922. April 27, 1906, one Matthiessen acquired 6,000 shares of stock at a cost of $141,375. Its value on March 1, 1913, was less than cost. December 4, 1921, desiring to make provision for his son, Erard, he transferred the stock to the New York Trust Company in trust for him with remainder over in case of his death. When the trust was created the market value of the stock was $577,500. The trustee sold it in 1922 for $603,385. In the tax return for that year the trustee included $87,385 as the gain resulting from the sale. That figure was reached by subtracting the cost of the shares to the trustor, then claimed to be $516,000, from the amount the trustee received for them. But the trustee then, as it always has, insisted that the gain should be calculated on the basis of the value at the time of the creation of the trust. And it applied the rate of 12½ per cent., applicable to capital gains. The Commissioner ascertained gain on the principle adopted in the return but found the cost to trustor to be $141,375. He applied the normal and surtax rates that ordinarily are laid upon the incomes of individuals and by the use of these factors arrived at an additional assessment of $238,275.95.[1] The Board of Tax Appeals sustained the determination. 27 B.T.A.

[1] On the basis of the return made the tax was $14,391.71. On the construction of § 202 (a) (2) for which trustee contends the tax would be $7,714.00.

1127. The lower court held that the gain had been correctly ascertained, but that it was taxable at 12½ per cent. 68 F. (2d) 19. These writs were granted on petition of the Commissioner and cross-petition of the trustee.

The questions are: (1) Whether the gain resulting from the trustee's sale is the difference between price paid by trustor and that received by trustee, and (2) if so, whether the 12½ per cent. rate is applicable.

The Revenue Act of 1921, 42 Stat. 227, governs. Section 2 (9) defines taxpayer to include any person, trust or estate subject to a tax imposed by the Act. Section 202 (a) provides: " That the basis for ascertaining the gain derived . . . from a sale . . . of property . . . shall be the cost of such property; except that . . . (2) In the case of such property, acquired by gift after December 31, 1920, the basis shall be the same as that which it would have in the hands of the donor." Section 206 (a) (6) defines capital assets to be " property acquired and held by the taxpayer for profit or investment for more than two years " and (b) provides that the net gain from the sale of capital assets may be taxed at the rate of 12½ per cent. instead of at the ordinary rates. Section 219 (a) declares that the normal and surtax on net incomes of individuals shall apply to the income of property held in trust, including (3) income held for future distribution; (b) the fiduciary is required to make the return of income for the trust. And subsection (c) provides that in cases under (a) (3) the tax shall be imposed upon the net income of the trust and shall be paid by the fiduciary.

By the trust indenture, which recites mutual covenants and agreements and the payment of $10 by each to the other as the consideration, the trustor did " sell, assign, transfer, and convey " the 6,000 shares " in trust, nevertheless, for the benefit of " his son, Erard, " to be administered by the trustee " under specified terms and condi-

tions among which are these: The trustee was required to hold the shares and any property purchased out of the avails, to collect and retain income until the twenty-first birthday of Erard, then to pay him the accumulated income, thereafter to pay him current income until he attained the age of twenty-five years, and at that time to deliver to him the principal and undistributed income. During the life of the trustor, the trustee was not to sell or reinvest without the written consent and approval of the trustor. In case of Erard's death before the age of twenty-five, the entire estate was to go to other sons of the trustor.

The trustor irrevocably disposed of the shares. He did not sell but made a gift. *Burnet* v. *Guggenheim*, 288 U.S. 280. He gave the trustee legal title temporarily to be held to enable it to conserve, administer and transfer the property for the use and benefit of his son to whom he gave the beneficial interest. It may rightly be said that the trustee and beneficiary " acquired by gift " as meant by § 202 (a).[2] If the broad definition in § 2 (9) stood alone, either might be regarded as the taxpayer but it is qualified by the rule that the trustee must pay the tax. It follows that the trustee properly may be regarded as the taxpayer and, for the purpose of calculating the gain, as having assumed the place of the trustor. Section 202 (a) (2) was enacted to prevent evasion of taxes on capital gains. *Taft* v. *Bowers,* 278 U.S. 470, 479, 482. And see *Cooper* v. *United States,* 280 U.S. 409. Transfers to trustees for the benefit of others are clearly within the reason for the enactment.

---

[2] *McDonogh's Executors* v. *Murdoch,* 15 How. 367, 400, 404. *Maguire* v. *Trefry,* 253 U.S. 12, 16. *Neilson* v. *Lagow,* 12 How. 98, 106–107, 110. *Croxall* v. *Shererd,* 5 Wall. 268, 281. *Doe* v. *Considine,* 6 Wall. 458, 471. *Bowen* v. *Chase,* 94 U.S. 812, 817, 818–819. *Young* v. *Bradley,* 101 U.S. 782, 787. *Anderson* v. *Wilson,* 289 U.S. 20, 24–25.

They may be used to avoid burdens intended to be imposed, quite as effectively as may gifts that are directly made. The difference between the cost to the trustor in 1906 and the amount for which the trustee sold in 1922 was rightly taken as taxable income of the trust.

We come to the question whether the gain derived from the trustee's sale is taxable at 12½ per cent. That rate is not applicable unless the shares were " capital assets " defined by § 206 (a) (6) to be " property acquired and held by the taxpayer for profit or investment for more than two years." The time between the creation of the trust and the sale was less than the specified period and, if the words alone are to be looked to, the shares were not by the taxpayer " held . . . for more than two years." Soon after the passage of the Act the Income Tax Unit of the Bureau of Internal Revenue ruled that property transferred to a trustee, for purposes and upon terms and conditions analogous to those expressed in the indenture before us, which remained in his hands less than two years was not " capital assets " and that the resulting gain was not taxable at the 12½ per cent. rate. That construction was followed by the Board of Tax Appeals, the Circuit Court of Appeals for the Third Circuit and the Court of Appeals of the District of Columbia.[3] The Commissioner says that the words of the definition are free from ambiguity and that the statute contains no exception. From an opinion of this court he

---

[3] I.T. 1379, I–2 C.B. (July–December, 1922) 41. I.T. 1660, II–1 C.B. (January–June, 1923) 36. I.T. 1889, III–1 C.B. (January–June, 1924) 70. *McKinney* v. *Commissioner* (1929) 16 B.T.A. 804, 808. *Johnson* v. *Commissioner* (1929) 17 B.T.A. 611, 614; affirmed (C.C.A.–3, 1931) 52 F. (2d) 727. *Schoenberg* v. *Commissioner* (1930) 19 B.T.A. 399, 400; affirmed, 60 App.D.C. 381; 55 F. (2d) 543. *Steagall* v. *Commissioner* (1931) 24 B.T.A. 1231, 1235. *McCrory* v. *Commissioner* (1932) 25 B.T.A. 994, 1011.

invokes these statements: " If the language be clear it is conclusive. There can be no construction where there is nothing to construe." *United States* v. *Hartwell,* 6 Wall. 385, 396. He suggests that his construction was approved by the Revenue Act of 1924, § 208 (a) (8), 43 Stat. 263, which retained the definition, and that the provision in the Revenue Act of 1926, § 208 (a) (8), 44 Stat. 19, which conforms to the construction for which the trustee here contends operated to make a change in the law.

The rule that where the statute contains no ambiguity, it must be taken literally and given effect according to its language is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. *Commissioner of Immigration* v. *Gottlieb,* 265 U.S. 310, 313. *Bate Refrigerating Co.* v. *Sulzberger,* 157 U.S. 1, 37. But the expounding of a statutory provision strictly according to the letter without regard to other parts of the Act and legislative history would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in *Brown* v. *Duchesne,* 19 How. 183, this court said (p. 194): " It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning." Quite recently in *Ozawa* v. *United States,* 260 U.S. 178, we said (p. 194): " It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must

examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail." And in *Barrett* v. *Van Pelt,* 268 U.S. 85, 90, we applied the rule laid down in *People* v. *Utica Ins. Co.,* 15 Johns. 358, 381, that "a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute, is not within the statute, unless it is within the intention of the makers."

The part of the definition under consideration is this: " held . . . for more than two years." Although on superficial inspection the words appear to be entirely clear, the Treasury Department deemed construction necessary to disclose the meaning that, upon consideration of the actual transactions of the taxpayers, it found Congress to have intended. Regulations 62, Art. 1651, declares: " The specific property sold or exchanged must have been held for more than two years, but in the case of a stock dividend the prescribed period applies to the original stock and the stock received as a dividend considered as a unit and where property is exchanged for other property . . . the prescribed period applies to the property exchanged and the property received in exchange considered as a unit." Construed strictly according to the letter, the provision would not include shares received as a dividend less than two years before the sale, or property taken in exchange within that period. The need of this regulation illustrates how ambiguities requiring construction often exist where upon first reading the words seem clear. Generally, questions as to the meaning intended do not arise until the language used is compared with the facts or transactions in respect of which the intent and purpose are to be ascertained. *Bradley* v. *Washington,*

*A. & G. Steam-Packet Co.,* 13 Pet. 89, 97. *Deery* v. *Cray,* 10 Wall. 263, 270. *Patch* v. *White,* 117 U.S. 210, 217. *Gilmer* v. *Stone,* 120 U.S. 586, 590. *American Net & Twine Co.* v. *Worthington,* 141 U.S. 468, 474.

Legislative reasons for applying the lower rate to capital gains give support to the construction for which the trustee contends. The report of the Committee on Ways and Means states: " The sale of . . . capital assets is now seriously retarded by the fact that gains and profits earned over a series of years are under the present law taxed as a lump sum (and the amount of surtax greatly enhanced thereby) in the year in which the profit is realized. Many such sales, with their possible profit taking and consequent increase of the tax revenue, have been blocked by this feature of the present law. In order to permit such transactions to go forward without fear of a prohibitive tax, the proposed bill, in section 206, adds a new section . . . to the income tax, providing that where the net gain derived from the sale or other disposition of capital assets would, under the ordinary procedure, be subjected to an income tax in excess of 15 per cent. [afterwards changed to 12½ per cent.] the tax upon capital net gain shall be limited to that rate. It is believed that the passage of this provision would materially increase the revenue, not only because it would stimulate profit-taking transactions but because the limitation of 15 per cent. is also applied to capital losses. Under present conditions there are likely to be more losses than gains." 67th Congress, 1st Session, House Report No. 350, p. 10. See also Senate Report No. 275, p. 12. In respect of the legislative purpose to lessen hindrance caused by high normal and surtaxes, there is no distinction between gains derived from a sale made by an owner who has held the property for more than two years and those resulting from one by a donee whose tenure plus that of the donor exceeds that period.

Here the taxable gain was ascertained by putting together the periods in which the shares were held by trustor and trustee respectively. The taxable gain was the same as if the former held continuously from the time of purchase in 1906 until the sale in 1922. But to ascertain the applicable rate the Commissioner broke the continuity. If the trustor had held until the sale, the 12½ per cent. rate would have been applicable and the tax would have been substantially less than one-fourth of the amount assessed against the trustee who, for the purpose of calculating the gain, was substituted for the trustor.[4]

Sections 202 (a) (2) and 206 (a) (6) are included in the same Act and are applicable respectively to different elements of the same or like transactions and are not to be regarded as wholly unrelated. While undoubtedly legally possible and within the power of Congress, the methods adopted and results attained by the Commissioner are so lacking in harmony as to suggest that the continuity required to be used to get the base was also intended for use in finding the rate. No valid ground has been suggested for requiring tenures to be added for the one purpose and forbidding combination for the other. The legislative purpose to be served by the application of the lower rate upon capital gains is directly opposed to the Commissioner's construction. There is no ground for discrimination such as that to which the trustee was subjected. It is to be inferred that Congress did not intend penalization of that sort.

The Commissioner's suggestion that, by retaining the same definition in the 1924 Act, Congress approved the construction for which he contends is without merit. The

---

[4] The deficiency assessed, $238,275.91, plus original assessment, $14,391.71, makes the total $252.667.66. The taxpayer's calculation indicates that if the 12½ per cent. rate were applied the total tax would be $58,921.51.

definition had not been construed in any Treasury Decision, by the Board of Tax Appeals or by any court prior to that enactment. The dates of all constructions of the definition to which our attention has been called are shown in the margin.[5] The Regulation above referred to was approved February 15, 1922. In respect of the question here involved, it puts no construction upon the definition. The rulings, I.T. 1379, 1660 and 1889, cited by the Commissioner were made before the passage of the 1924 Act but they " have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law." See cautionary notice published in the bulletins containing these rulings. It does not appear that the attention of Congress had been called to any such construction. There is no ground on which to infer that by the 1924 Act Congress intended to approve it.

The Revenue Act of 1926, § 208 (a) (8)[6] contains substantially the same language as that used in the 1921 Act to define capital assets. That part of the subdivision is followed by rules for determining the period for which the taxpayer has held the property. Among them is one applicable to facts such as those presented in the case before us. It is substantially the same as the construction for which the trustee contends. Mere change of language does not necessarily indicate intention to change the law. The purpose of the variation may be to clarify what was doubtful and so to safeguard against misapprehension as

---

[5] See Note 3.

[6] " The term ' capital assets ' means property held by the taxpayer for more than two years. . . . In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 204 [corresponding to § 202 (a) (2) of the 1921 Act] such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person." 44 Stat. 19.

to existing law. In view of the inclusion of the same definition in the Acts of 1921, 1924 and 1926 and the legislative purpose underlying it, the contention that the new words were added to change the meaning of " capital assets " as defined in the earlier Acts is without force. The definition so clarified was not new law but " a more explicit expression of the purpose of the prior law." *Jordan* v. *Roche,* 228 U.S. 436, 445. *Merle-Smith* v. *Commissioner,* 42 F. (2d) 837, 842. *McCauley* v. *Commissioner,* 44 F. (2d) 919, 920.

*Affirmed.*

MR. JUSTICE ROBERTS, dissenting.

Within the meaning of § 202 (a) of the Revenue Act of 1921 the trustee acquired the trust *res* by gift. But reference must be had to §§ 206 and 219 to ascertain the rate of tax to be applied to the gain on the sale. These are distinct sections, found not in juxtaposition with 202, but in portions of the Act dealing with unrelated topics; the one with " Capital Gains " and the other with " Estates and Trusts." Confessedly the first grants an exemption from the normal rate of tax and allows payment at a lower rate only to a " taxpayer " who realizes gain from the sale of a capital asset which he (the " taxpayer ") has held for profit or investment for over two years. The second, in words too plain to be misunderstood, designates the trustee of a trust such as the one here in question as the taxpayer. The unambiguous mandate of the Act should be enforced.

■ Under the recognized rules of construction we should give the words of the statute their ordinary and common meaning. *Old Colony R. Co.* v. *Commissioner,* 284 U.S. 552, 560. If the language be plain there is nothing to construe. *Hamilton* v. *Rathbone,* 175 U.S. 414, 419; *Thompson* v. *United States,* 246 U.S. 547, 551. We cannot enact a law under the pretense of construing one. *Heiner* v. *Donnan,* 285 U.S. 312, 331.

Nor can we avoid the plain meaning of a statute by construction, so-called, because we think as written it begets " hard and objectionable or absurd consequences, which probably were not within the contemplation " of its framers. *Crooks* v. *Harrelson,* 282 U.S. 55. Where, as in the present case, the provision is one granting an exemption from the full rate of taxation, doubts must be resolved against the taxpayer. *Heiner* v. *Colonial Trust Co.,* 275 U.S. 232, 235.

■ For twelve years after the passage of the Act the administrative rulings uniformly denied the benefit of the capital gains sections of the Act of 1921 to a donee who had not himself held the property over two years. These are entitled to respectful consideration and will not be disregarded except for weighty reasons. *Fawcus Machine Co.* v. *United States,* 282 U.S. 375, 378. Two Courts of Appeals have decided against the trustee's contention. In the face of this unbroken agreement of the executive and judicial departments, we should be slow to announce a contrary view.

■ The reason assigned for ignoring the plain import of the terms used in §§ 206 and 219 is that the provisions, read in their ordinary sense, bring about a result thought to be contradictory of the paramount purpose to permit the payment of tax on capital gains at a reduced rate. The suggestion is that Congress inadvertently omitted a provision whereby the tacking of the tenures of donor and donee would be allowed for finding the rate, since it has required such tacking for ascertaining the base. It is said that it would be absurd to attribute any other intent to the framers of the law. But there is no necessary inconsistency in the two provisions, literally applied. Plainly the requirement that a donee should calculate his gain on the value paid by his donor was to prevent evasions, through transfer and immediate sale by the donee, who would claim the value at the date of the gift

as the base and assert that he had made no gain. There is no incongruity in declaring that in the case of a gift the donee shall pay tax at the full rate unless he shall have held the property a full two years. Congress might well think it proper thus to condition the privilege of a reduced rate to one who paid nothing for the property.

Assuming, however, for the sake of argument, that there is a logical inconsistency between the prescribed method for arriving at the base and that for ascertaining the rate, it is the province of Congress alone to remove it. There is no abstract justice in any system of taxation. Nothing could involve more dangerous consequences, than that the courts should rewrite plain provisions of a tax act in order to bring them into harmony with a supposed general policy. Such a principle of decision would embark us on a sea of construction whose bounds it is difficult to envisage. Every revenue act embodies policies which conflict to some extent with those elsewhere in the Act evinced. Income tax legislation is a continuous series of corrections and amendments in an effort to make the policy of taxation more congruous.

The very sections extending the relief of a reduced rate on capital gains, teach us how inconsistently the principle has been followed and how impossible and improper it would be for a court to rewrite the sections in an effort to make them logically consistent.

The Act omitted to impose any limitation of 12½ per cent. on capital net losses. If, therefore, a taxpayer had no capital gains during the year, he could deduct his entire capital losses from his ordinary income.[1] This omission was cured by the Revenue Act of 1926, which reduced the permissible deduction from the tax on net income to 12½ per cent. of capital net loss.[2] The amend-

[1] § 202 (a) (2); § 206 (a) (2); § 206 (b); 42 Stat. 229, 232–3.
[2] § 208 (c), 44 Stat. 20.

ment of 1926, in turn, leaves a glaring inconsistency, for though the taxpayer may have no actual income, yet as a result of the application of the mandatory 12½ per cent. rate to capital net losses, he may have to pay a tax.[3]

Under the Act of 1921 capital assets were so defined as to exclude property held for personal use or consumption of the taxpayer or his family.[4] By the Revenue Act of 1924 and later Acts the exception was omitted.[5] It results that whereas the taxpayer may now include such property as the residence occupied by him, his automobiles, his jewels, and similar items, in respect to gains, he may not include them with respect to losses, for no deduction whatever for losses is permitted in the case of property held for personal use or consumption.[6]

Instances might be multiplied of logical inconsistency in the incidence of the capital gain or loss provisions; but this court is not at liberty, because it thinks the provisions inconsistent or illogical, to rewrite them in order to bring them into harmony with its views as to the underlying purpose of Congress.

■ The sections in question were reënacted without change in the Revenue Act of 1924. If, as is suggested, omission of a provision permitting one circumstanced as this trustee to have the benefit of the reduced rate in virtue of his donor's as well as his own tenure was an inad-

---

[3] See § 208 (c), 44 Stat. 20. As stated in Regulations 69, Art. 1654, by 208 (b), if the taxpayer has a capital net gain he has an election whether to return it under the capital gains and losses provisions; but the limitation with respect to a capital net loss provided in 208 (c) will be applied irrespective of the taxpayer's election.

[4] § 206 (a) (6), 42 Stat. 233.

[5] § 208 (a) (8), 43 Stat. 263; Act of 1926, § 208 (a) (8), 44 Stat. 19; Act of 1928, § 101 (a) (8), 45 Stat. 811.

[6] Revenue Act of 1926, § 208 (a) (2), 44 Stat. 19; Regulations 69, Art. 1651; Art. 141; Cumulative Bulletin V–I, 61.

vertence as respects the Act of 1921, it is curious that the same inadvertence occurred in the enactment of the 1924 Act, despite the fact that the rulings of the department had been against the trustee's present contention. The section was amended by the Act of 1926 so as to allow the donee to tack his donor's tenure to make up the required two years.[7] In reporting it the committees of the Senate and House both referred to this as an amendment of the law. The change was recommended in connection with two other alterations of language, both intended to confirm rulings of the department. In referring to this particular alteration the committees said:

" The same question arises in the case of property received by gift after December 31, 1920. The amendment provides that the period in which the property was held by the donor shall be added to the period in which the property was held by the donee in determining whether or not the property so received falls within the capital gain or loss section." [8]

Certainly this language is far from compelling the conclusion pressed upon us, that the amendment was merely a confirmation of the understanding of Congress as to the effect of the earlier Acts.

The judgment should be reversed and the cause remanded for the calculation of the tax to the trustee at ordinary rates for the reason that it did not hold the capital assets for two years, so as to entitle it to the 12½ per cent. rate.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in this opinion.

---

[7] § 208 (a) (8), 44 Stat. 19.

[8] House Rep. No. 1 and Senate Rep. No. 52, 69th Cong., 1st Session.