### OGLE v. HELVERING, Commissioner of Internal Revenue.
### No. 334.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

Robert Driscoll, J. B. Faegre, Leland W. Scott, and Hayner N. Larson, all of Minneapolis, Minn. (Harry Blackmun, Junell, Driscoll, Fletcher, Dorsey & Barker, and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

This appeal involves a question of the meaning of "capital assets," as that term was used in section 101 (c) (8) of the Revenue Act of 1928, 26 USCA § 2101 (c) (8). Mrs. Ogle, the taxpayer, was one of the next of kin of one Rand, who died intestate on October 31, 1925, leaving some shares of stock as part of his estate, which his administrator distributed to her on January 28, 1927, and which she sold on May 28, 1928, at an advance above their value at distribution. The question is whether she "held" the shares from October 31,

1925, or from January 28, 1927; on this depends her privilege under section 101 (a), 26 USCA § 2101 (a), to limit her tax to one-eighth of the gain. If she "held" them only from the date of distribution, the gain was part of her ordinary income, as the Commissioner and the Board have held. The Circuit Courts of Appeal of the Third and Eighth Circuits have decided the point in favor of the Treasury; that of the First, contra. McFeely v. Helvering, 74 F.(2d) 1017 (C. C. A. 3); Dibblee v. Commissioner, Helvering, 75 F.(2d) 617 (C. C. A. 9); First National Bank v. United States, 76 F.(2d) 200 (C. C. A. 1). Although it is extremely likely that the Supreme Court will allow certiorari, we must nevertheless decide the case, else the taxpayer may not secure an independent hearing in that court.

■ Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457, on which the taxpayer relies, does not help her. It did hold that the word "acquired," in the Acts of 1918 and 1921 (40 Stat. 1057, 42 Stat. 227), referred to the death of the taxpayer's ancestor; it did not even intimate that "acquired" and "held" were synonymous. But that aside, the question before the court was not of the two years period under section 101 (a), 26 USCA § 2101 (a), or its predecessors, but barely as to the proper "basis" for a gain taxed as ordinary income. At least in the Act of 1921, section 202 (a) (3), 42 Stat. 229, expressly fixed the date of "acquisition" as the date for the "basis"; section 113 (a) (5) of 1928, 26 USCA § 2113 (a) (5), fixes the date of distribution in the case of intestacies of the personalty, as the opinion in Brewster v. Gage observed. This taxpayer cannot afford to concede that the date of "acquisition" is the date of the "basis," even though "acquisition" and "holding" were the same. Moreover, she cannot tack the administrator's tenure before distribution to her own; under the Act of 1928 tacking is controlled by subdivision B of section 101 (c) (8), 26 USCA § 2101 (c) (8) (B), and is permissible only when the "basis" of the taxpayer under section 113 (26 USCA § 2113) is the same as that of a predecessor in tenure. The "basis" of the administrator is fixed by section 113 (a) (5), 26 USCA § 2113 (a) (5), as the value at the death of the intestate. The taxpayer to succeed must prove as res integra that she "held" the shares throughout the period of administration.

■ Section 113 (a) (5) was pretty plainly drafted in conformity with the general municipal law relating to estates. Gains on devises, realty descended, and specific legacies were measured from the death of the ancestor; on pecuniary and residuary legacies and on intestacies of personalty, from distribution; in all cases coinciding with the vesting of title at common law. It seems to us that this pattern ought not only to determine the "basis," but the period on which the privilege should depend. The word "held" is indeed colloquial; we need not say that it always implies possession; it does not. Helvering v. New York Trust Co., 292 U. S. 455, 54 S. Ct. 806, 78 L. Ed. 1361; Commissioner v. Nevius, 76 F.(2d) 109 (C. C. A. 2). But in this context we think it does. Otherwise we should have to say that between the intestate's death and distribution the administrator and the next of kin both "held" the personalty. The administrator, had he kept the shares for more than two years after the intestate's death and then sold them, would surely have had the privilege conferred by section 101 (a), 26 USCA § 2101 (a), like an individual. If he "held" during that period, the next of kin did not; yet unless he did, he may not limit the estate's tax. Moreover, in general the statute makes the time at which the "basis" is fixed, the starting point of the period which determines the privilege. So strong is this as even to control the term "held," when its natural meaning is otherwise. Helvering v. New York Trust Co., supra, 292 U. S. 455, 54 S. Ct. 806, 78 L. Ed. 1361. Here we need do no violence to that word in order to conform with the general plan; rather we should have to wrench it unduly to do anything else. Finally, the privilege is in any case a partial exemption, and the taxpayer must bring herself clearly within it.

Order affirmed.