## RAND v. HELVERING, Com'r of Internal Revenue. *

### No. 10224.

Circuit Court of Appeals, Eighth Circuit.

Aug. 13, 1935.

*Writ of certiorari granted 56 S. Ct. 146, 80 L. Ed. ——.

Hayner N. Larson, of Washington, D. C. (Robert Driscoll, J. B. Faegre, Leland W. Scott, Harry Blackmun, Junell, Driscoll, Fletcher, Dorsey & Barker, and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for petitioner.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

**STONE, Circuit Judge.**

This is a petition to review a redetermination of income taxes for the year 1928. Alonzo T. Rand died intestate on October 31, 1925, leaving a large estate of real and personal property. As one of the heirs, petitioner received from the estate certain corporate stock on January 28, 1927, under an order of distribution. On May 28, 1928, he sold this stock at a profit.

Petitioner claimed the right to return this profit as capital gains. The Commissioner denied this claim and treated the profit as ordinary income. The ground for such denial was that the stock had not been held by petitioner "for more than two years" and therefore did not constitute "capital assets" subject to the application of the "capital gain" rate under the applicable Revenue Act of 1928, § 101 (a), (c) (1) and (8), 26 USCA § 2101 (a), (c) (1, 8). Whether such holding was for more than two years depends upon whether it began at the death of Alonzo T. Rand or at the date of distribution of this stock to petitioner. The Board confirmed the Commissioner (30 B. T. A. 1464), upholding date of distribution. This it did upon the authority of McFeely, 29 B. T. A. 998, and Dibblee, 29 B. T. A. 1070, without further statement of reasons. These two citations have passed to affirmance in McFeely v. Helvering, 74 F.(2d) 1017 (C. C. A. 3), and Dibblee v. Helvering, 75 F.(2d) 617 (C. C. A. 9). The same view has been taken in Ogle v. Helvering (C. C. A. 2) 77 F.(2d) 338 (where the petitioner was another heir of Alonzo T. Rand), and the contrary view is declared in First Nat. Bank of Boston v. United States, 76 F.(2d) 200 (C. C. A. 1). The only issue here is whether petitioner's holding of this stock began at death of Alonzo T. Rand or at date of distribution.

Section 101 (a) permits a flat rate of $12\frac{1}{2}$ per cent. of "capital net gains" in lieu of surtaxes—at the option of the taxpayer. Section 101 (c) contains the definitions for application of this flat rate. "Capital net gain" is defined, (c) (5), 26 USCA § 2101 (c) (5), as being "capital gain" less certain deductions. "Capital gain" is defined, (c) (1), 26 USCA § 2101 (c) (1), as taxable gain from the sale or exchange of "capital assets." "Capital assets" are defined, (c) (8), 26 USCA § 2101 (c) (8), as being "property held by the taxpayer for more than two years," with certain exceptions not here pertinent. A portion of (c) (8) is as follows:

"For the purposes of this definition—

"(A) In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 113 [section 2113], the property received has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as the property exchanged.

"(B) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113 [section 2113], such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

"(C) In determining the period for which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under the provisions of section 112 [section 2112g] (g) of this title or under the provisions of section 203 (c) of the Revenue Act of 1924 or 1926 [section 934 of this title], there shall be included the period for which he held the stock or securities in the distributing corporation prior to the receipt of the stock or securities upon such distribution."

Concisely stated, the opposed contentions of the parties are as follows: The Commissioner urges two matters: (1) That the holding period of more than two years must be construed under the influence of section 113 (a) (5), 26 USCA § 2113 (a) (5), which declares the basis for determining gain (for ordinary income tax purposes) from sales of property transmitted at death, and that such basis is, as to intestate estates, "the fair market value of the property at the time of the distribution to the taxpayer." The reason advanced for this position is that the two sections are "applicable to different elements of the same or like transactions"—a reason which, he contends, is particularly fortified by the inclusion in the definition of capital assets of the requirement in section 101 (c) (8) (B) as to tenure of a predecessor (in certain situations) in estimating the two-year period. (2) That standing unaffected by section 113, "held," as used in section 101 (c) (8), must be construed as being from date of distribution, because such results from giving that word its ordinary meaning.

The position of petitioner is (1) that section 113 has nothing to do with section 101 (c) (8) as to the issue here, and (2) that "held" should be construed as beginning with the time he *acquired* the stock which was the date of death. The reasons urged as supporting the exclusion of consideration of section 113 (26 USCA § 2113)

are that its inclusion would result in different applications of section 101 (26 US CA § 2101) depending solely on differences in kind of property transmitted by death and differences in form of transmission from decedent; that it would defeat the prime purpose of section 101; and, as to section 101 (c) (8) (B), that it has no bearing on the issue here except to accentuate the intention of Congress to broaden rather than restrict the influence of the capital gains section (101). The reasons for construing "held," in section 101 (c) (8), as beginning with the death, are that the holding begins necessarily when the stock is acquired and that it has been judicially determined (Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457) that such property is acquired at the death.

### Application of Section 113.

It seems logical to inquire first whether section 113 should be considered in construing section 101 (c) (8), because if it is then we are not controlled by the construction of section 101 (c) (8) standing alone. In such inquiry, it is advisable first to determine the influence upon this consideration of section 113 which may be exerted by paragraph (B) of section 101 (c) (8). The sole effect of that paragraph is to extend the period of holding in those instances where section 113 has gone further back than the actual acquisition by the taxpayer —such as in gifts, where the holding of the donor is regarded as that of the donee taxpayer for estimating income tax gain purposes. Section 113 (a) (2), 26 USCA § 2113 (a) (2). The effect is to create a substituted for an ordinary legal basis with the result that tenure or holding is thereby (in a sense) artificially extended. Where the normal legal tenure reaches to the earlier date, there is no place for such extension. Clearly, property cannot in any true sense be "held" until the holder has some character of legal interest therein. A residuary legatee or an heir of an intestate has a legal interest from time of death so it is entirely reasonable that such legatee or heir *might* be designated as holding from death, and revenue statutes prior to the act of 1928 have been so construed. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457. Therefore, there is no place in such a situation to employ a substituted extension to carry the "acquisition" of legal interest back to death. We think *neither* paragraph (B) nor any inference from it is of any aid here.

Taking up next whether section 113 is so related in its subject-matter to section 101 that they should be construed together: This question seems directly determined by Helvering v. N. Y. Trust Co., 292 U. S. 455, 54 S. Ct. 806, 78 L. Ed. 1361, when considered in connection with the situation here. In that case the court was faced with the problem of whether a trustee who had sold property less than two years after creation of the trust but more than two years after acquisition by the creator of the trust was entitled to the advantages of the capital gains provision of the Revenue Act of 1921. The capital gains section of that act was section 206 (42 Stat. 232), which was the forerunner of section 101 here. Section 202 of that act (42 Stat. 229) is the forerunner of section·113 here. In construing the language of section 206 (a) (6), defining "capital assets," the court said that the language there (as here in section 101) "held * * * for more than two years" standing alone might be entirely clear as meaning only from creation of the trust (292 U. S. 455, pages 463, 464, 465, 54 S. Ct. 806, 809, 78 L. Ed. 1361), but that "sections 202 (a) (2) and 206 (a) (6) are included in the same act and are applicable respectively to different elements of the same or like transactions and are not to be regarded as wholly unrelated." 292 U. S. 455, page 467, 54 S. Ct. 806, 810, 78 L. Ed. 1361. The court then construed the two sections together in the light of the legislative history and the object intended to be accomplished, and determined that "held * * * for more than two years" included (in the case of this trustee who was regarded as a donee under section 202 [a] [2]) the period of holding by the creator of the trust.

In that case, the ambiguity as to the meaning to be given "held," in the statutory expression "held * * * for more than two years," arose when the language used was compared with facts or transactions in respect of which the intent and purpose were to be ascertained. 292 U. S. 455, page 465, 54 S. Ct. 806, 809, 78 L. Ed. 1361. The situation here presented demands the same treatment. This statute is a whole and states the requirements as to income taxation. In construing any part of it, such construction must have the entirety in mind. This is merely applying a fundamental rule of construction—applicable alike to statutes, instruments, and transactions. The particular matter to be con-

strued will indicate what, if any, other parts of the statute might be affected. The purpose and legislative history (Helvering v. N. Y. Trust Co., 292 U. S. 455, 464, 54 S. Ct. 806, 78 L. Ed. 1361) of these various related parts of the act will guide to the proper meaning for all of them.

Here there is a clear relation between section 113 and section 101. Both deal with taxation of gains derived from sales of property. The former determines the measurement of such gains for all income tax purposes, irrespective of rate of taxation to be applied. Such measurement required a statement, in general or particular terms, of the base value date and such dates are stated therein as to various situations. Section 101 is a rate of tax provision applicable to the taxable sale gains as measured in section 113. Section 101 required a prescribed holding period to make its privileges available to the taxpayer—obviously, any holding period must have a legal beginning or base value date. Thus the situation is that of a taxable gain measure base value date (section 113) and a tax rate base value date (section 101) upon the gain so measured; both applying to the same character of gain, to wit, from sales of property. Clearly the two are closely related and there should be no construction as to this date in section 101 without regard to section 113.

As the two sections should be considered together, we pass to the purpose of section 101 to ascertain in what respect that is affected by section 113. This purpose is clear. 67th Congress, 1st Session, House Report No. 350, p. 10, and Senate Report No. 275, p. 12; Helvering v. N. Y. Trust Co., 292 U. S. 455, 466, 54 S. Ct. 806, 78 L. Ed. 1361; Helvering v. Bliss, 293 U. S. 144, 148, 55 S. Ct. 17, 79 L. Ed. 246, 95 A. L. R. 207. The situation sought to be remedied by this section was as follows: The income tax period was one year and covered gains during the year. Enrichment through mere increase in value of property was not regarded as taxable gain until there was a realization thereof through sale or otherwise. McLaughlin v. Alliance Ins. Co., 286 U. S. 244, 249, 52 S. Ct. 538, 76 L. Ed. 1083; Weiss v. Wiener, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. Such realization might, and often did, represent the accumulating increase over many years, yet the entire gain was taxed to the year in which realized. Often this would raise the taxable income considerably in the surtax

rate brackets. Where such raise would occur, it prevented many sales and the realization of taxable gains therefrom. "In order to permit such transactions to go forward without fear of a prohibitive tax" (House Report, supra), the Revenue Act of 1921, § 206, introduced the plan of a flat restricted surtax rate applicable to such situations and made its use optional with the taxpayer. The sole purpose of such provision was "to relieve gain thus derived of the heavy surtaxes then applicable." Helvering v. Bliss, 293 U. S. 144, 148, 55 S. Ct. 17, 19, 79 L. Ed. 246, 95 A. L. R. 207. While the provision is to be construed liberally (Helvering v. Bliss, 293 U. S. 144, 150, 151, 55 S. Ct. 17, 79 L. Ed. 246, 95 A. L. R. 207) to effect this purpose, it is obvious that construction should be confined to the purpose.

It was no part of the intention of Congress that the taxpayer should escape payment on any portion of the taxable gain—no matter over what period the gain had accumulated. The remedy was solely by an optional special rate of taxation upon such gain which rate might be advantageous to the taxpayer. The important thing was the amount of the tax to be paid, and this was brought about through the combined effect of rate and taxable gain—the difference was solely in rates. If the taxpayer had held the property only during the tax year of realization, clearly there was no purpose in relieving him from any part of the regular tax. Congress had in mind the one situation of gain accumulated over a longer period. This it clearly expressed in the requirement that the property should be "held" for more than two years. Nor was Congress interested in accumulations which were not taxable to the taxpayer involved for such lay entirely outside its purpose in enacting the capital gains rate. The only thing involved was accumulations of taxable gain *by the particular taxpayer*. Therefore, to give full effect to the purpose of section 101 and, at the same time, to limit that section to its full purpose, the two-year period must be construed as controlled by the taxable gain provisions of section 113—unless (not true here) Congress has clearly expressed some other intention.

So applying section 113, we find that it expressly fixes the base value date for measuring taxable gain from sales by the heir of an intestate as being the date of distribution to him of the property sold. Accumulations prior to that date do not affect his tax because his measurement of taxable gain begins with that date.

Petitioner argues that such a result produces a difference in like situations which amounts to an absurdity. It is true that difference exists under section 113 in the measure of taxable gain, because as to real property and specific devises of personalty taxable gain dates from death while as to personalty devolving through residuary devise or intestacy taxable gain dates from distribution. Also it is true that if section 101 is construed as controlled by this measure of taxable gain, a corresponding difference will appear in the measurement of the more than two-year period under section 101 and therefore in the right to come under that section. However, this difference is so clearly expressed in section 113 that there can be no room for construction as to what Congress meant as to the measure of taxable gain in the above instances, and there can be no question of the power to make such distinction. Helvering v. N. Y. Trust Co., 292 U. S. 455, 467, 54 S. Ct. 806, 78 L. Ed. 1361; Brewster v. Gage, 280 U. S. 327, 335, 50 S. Ct. 115, 74 L. Ed. 457. The argument then amounts to a claim that to carry this difference into section 101 by construction results in an absurdity not to be attributed to congressional intention. The reason urged for existence of such absurdity is that it would result in different treatment of like situated taxpayers. Like situated in what respect? Obviously, in respect to the time (death) when property interest may be regarded as attaching to the property. But this like situation did not appear judicially in connection with taxing statutes until Brewster v. Gage, supra, which was decided in 1930, after enactment of the Revenue Act of 1928. Before that decision, Congress might well have felt doubtful as to whether for taxation on sales gains it should, or possibly could, adopt the same standard of date of beginning of holding—acquisition—for real estate and specific devises of personalty as for personalty coming residuary or intestate. This doubt is strongly intimated in the Senate Report (No. 960, 70th Congress, 1st Session, p. 26) on the act of 1928, and is directly declared in the Reports (73d Congress, 2d Session, H. R. No. 704, p. 28, and S. R. No. 558, p. 35) on the act of 1934, made after Brewster v. Gage,

as follows: "Section 113 (a) (5) of the Revenue Act of 1932 [26 USCA § 3113 (a) (5)] is a re-enactment of a similar provision contained in the 1928 act. The change in the 1928 act was made because there was some doubt as to meaning of the term 'date of acquisition', which was the term used under the Revenue Act of 1926. Since the 1928 act was passed, the Supreme Court has defined 'the date of acquisition' to mean the date of death in the case of all property passing by bequest, devise, and inheritance, whether real or personal. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457. Section 113 (a) (5) of the bill conforms to the language contained in the Revenue Act of 1926, so that a uniform basis rule may be required in the case of property passing at death, whether real or personal." In this view of the congressional mind as to the law when considering the 1928 act, it is clear that the similarity of situation was by no means then clear.

But there is another consideration in this regard. To construe section 101 as petitioner contends produces the situation following: The purpose of section 101 is to afford relief from excessive surtaxes as to realized gains accumulating for more than two years in the taxpayer; such gains on real estate and specific devises are measured from death and the more than two-year period under section 101 begins at that time; such gains on personalty derived as residuary legatee or in intestacy are measured from distribution yet the period under section 101 goes back further to the death. A possible result (as here) is that specific property may be identified to the residuary legatee or heir only a few months before sale by him so that he could not have known longer than those months either the property he could sell or, more important here, what the tax effect upon him of the sale would be and yet he could avail himself of a statute passed for the one purpose of not retarding sales because of the tax result arising from accumulation of gain for more than two years. Thus parties in like position, *as to the purposes of section 101* (to relieve from accumulations of gains), are differently treated and one of them given an advantage much beyond the fullest purpose of the statute. If construed as the Commissioner contends, all derivators from an estate are, as to the purposes of the section, treated exactly alike.

While we are convinced that section 101 should be construed in the light of section 113, yet the result would be the same if section 101 were alone considered, for then the language there used would govern and that language clearly limits "held" to the period after distribution. Helvering v. N. Y. Trust Co., 292 U. S. 455, 463, 464, 465, 54 S. Ct. 806, 78 L. Ed. 1361.

The determination of the Board is affirmed.