September 8, 1979

# 79-65  MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

## Merit Systems Protection Board—Term of Office— Statutory Construction—5 U.S.C. § 1202

This responds to the request of your Office for our opinion on the question whether the President's nomination of Mr. A to be a member of the Merit Systems Protection Board (MSPB) correctly states the term of the office as expiring on March 1, 1981, or whether he should be nominated for a term of 7 years. It is our opinion that the nomination is correct as it stands.

The Merit Systems Protection Board was created by Reorganization Plan No. 2 of 1978[1] and was continued, as modified, by the Civil Service Reform Act of 1978, § 202(a).[2] The plan was made effective January 1, 1979.[3] The effective date of the Act was January 11, 1979.[4] In creating the Board the plan had provided simply: "The United States Civil Service Commission is hereby redesignated the Merit Systems Protection Board."[5] It also redesignated the commissioners as members of the Board.[6] The Act provides for appointment of members of the Board to 7-year terms,[7] but also contains a transition provision relating to the terms of members serving on the Board on the effective date of the Act.[8]

Commissioners of the Civil Service Commission served 6-year terms that were systematically staggered so that one term expired every 2 years.

---

[1] 43 F.R. 36037 (1978), reprinted in 5 U.S.C. § 1101 note (Supp. II, 1978).

[2] 5 U.S.C. §§ 1201–1209 (Supp. III, 1979).

[3] *Executive Order No.* 12107, § 1, 5 U.S.C. § 1101 note (Supp. II, 1978).

[4] *Civil Service Reform Act of 1978*, § 907, 5 U.S.C. § 1101, note (Supp. III, 1979).

[5] Reorganization Plan No. 2, § 201(a), 43 F.R. at 36038 (1978); 5 U.S.C. § 1101 note (Supp. II, 1978).

[6] *Id.*

[7] Civil Service Reform Act, § 202(a). Section 202(a) of the Act added Chapter 12 to title 5, United States Code. Chapter 12 consists of §§ 1201–1209. The terms of office of the members of the MSPB are set by § 1202(a), 5 U.S.C. § 1202(a) (1979 Supp.).

[8] *Civil Service Reform Act of 1978*, § 202(b), 5 U.S.C. § 1201, note (Supp. III, 1979).

When the commissioners were redesignated members of MSPB, their terms of office remained the same and continued to be controlled by 5 U.S.C. § 1102.⁹ That section provided:

(a) The term of office of each Civil Service Commissioner is 6 years. The term of one Commissioner ends on March 1 of each odd-numbered year.

(b) A Commissioner appointed to fill a vacancy occurring before the end of the term of office of his predecessor serves for the remainder of that term. The appointment is subject to the requirements of section 1101 of this title.

(c) When the term of office of a Commissioner ends, he may continue to serve until his successor is appointed and has qualified.

(d) The President may remove a Commissioner.

Under § 1102 the terms of the commissioners and, as of January 1, 1979, of the members of the MSPB were due to expire, sequentially, on March 1, 1979, 1981, and 1983.

On January 1, 1979, Mr. S, former civil service commissioner, then a member of the MSPB, whose term was due to expire on March 1, 1981, received a recess appointment to a different office. He was sworn in on January 2. On that date he automatically vacated his office as a member of the Board.¹⁰ The office that he vacated had not been filled by January 11, 1979, the effective date of the Act.¹¹ The question presented is whether the fact of vacancy on that particular date worked an immediate change in the term of the office vacated, the one for which Mr. A has been nominated. We believe that it did not.

The transition provision of the Act reads:

Any term of office of any member of the Merit Systems Protection Board serving on the effective date of this Act shall continue in effect until the term would expire under section 1102 of title 5, United States Code, as in effect immediately before the effective date of this Act, and upon expiration of the term, appointments to such office shall be made under sections 1201 and 1202 of title 5, United States Code (as added by this section).

Literally this provision is inapplicable to Mr. A's position. As written it would seem to affect only the term of the office that was actually filled on January 11, 1979. A literal reading thus points to the conclusion that an office such as the one with which we are concerned, in existence but vacant

---

⁹Civil Service Reform Act of 1978 § 201(a), amended, *inter alia,* 5 U.S.C. § 1102. As used herein "5 U.S.C. § 1202" refers to that section of title 5 as in effect immediately before the effective date of the Act.

¹⁰The law in effect on January 2 provided that commissioners of the Civil Service Commission (who had been redesignated members of the MSPB by that date) could not "hold another office or position in the Government of the United States." 5 U.S.C. § 1101 (1976).

¹¹Due to a complicated chain of events, two of the three positions of members of the Merit Systems Protection Board were vacant on the effective date of the Act.

on January 11, should be filled in accordance with the nontransitional terms of the Act—that is, with a person appointed for 7 years. However, in our view Congress did not intend such a result.

In explaining the transition provision the Senate report said:

> Subsection (e) provides that individuals currently serving on the Civil Service Commission, who will become members of the Merit Systems Protection Board by virtue of Reorganization Plan No. 2 of 1978, will continue to hold their positions on the Board until their terms would otherwise have expired as members of the Civil Service Commission (commissioners currently serve for six-year terms). If an individual now serving as a Civil Service Commissioner does not serve out the remainder of his present term, an individual appointed to fill the vacancy will only serve for the remainder of the six-year term established under the older law. Since the present terms of the Commission are staggered, this procedure will assure that the new terms of the members of the Board will continue to be staggered.[12]

It is clear from this legislative history that the intent of Congress in including the provision in the Act was twofold. First, it wished to maintain continuity with respect to the membership of the Merit Systems Protection Board. Second, and more importantly, it intended to maintain continuity in the terms of office of the members of the Board. This is apparent not only from the quoted legislative history of the provision but also from its plain language. This continuity, however, was based upon a congressional assumption that the membership of the Board would be fixed on the effective date of the Act. Given this assumption, the primary focus of the transition provision was on continuing, for an interim period, the terms of office of the members of the Board as they were established by Reorganization Plan No. 2—that is, derivatively from 5 U.S.C. § 1102.[13] The reason for this focus is clear. As is unequivocally stated in the legislative history, it is to "assure that the new terms of the members of the Board will continue to be staggered," as were the terms of the former civil service commissioners.

---

[12]S. Rept. 969, 95th Cong., 2d sess. 28 (1978). Both the House and the Senate versions of the Civil Service Reform Act contained transition provisions identical to the one finally enacted. Section 202(a) of the Senate bill, S. 2640, 95th Cong., 2d sess. § 202(a) of the Senate bill, S. 2640, 95th Cong., 2d sess. § 202(a) (1978), would have added a new chapter 12, consisting of §§ 1201–1207, to title 5 of the United States Code. The transition provision was subsection (e) of § 1202 to be added. In the House, the transition provision was § 202(b) of H. 11280, 95th Cong., 2d sess. (1978). The House report erroneously describes H. 11280, § 202(b), as establishing the Board. See H. Rept. 1403, 95th Cong., 2d sess. 20 (1978). Actually, it was § 202(c) of H. 11280, as reported, that established pay rates. See 124 CONGRESSIONAL RECORD H. 9368 (daily ed., Sept. 11, 1978), H. 9676 (daily ed., Sept. 13, 1978).

[13]Under the provision, as its explanation emphasizes, the duration of an initial term of office of a member of the "new" (congressionally created) Merit Systems Protection Board should not be changed by the resignation of a former member of the Civil Service Commission (whom Congress erroneously assumed would be serving on the Board on the effective date of the Act). Rather, the term should continue as unexpired and may be filled only for the duration of the period fixed by § 1102.

The question Mr. A's nomination presents, therefore, is whether the words or intent of § 1102 should govern the term of office. Read literally the transition provision does not cover Mr. A and, therefore, he could receive a 7-year term. On the other hand, such a term would defeat the congressional intent of providing systematically staggered terms. The problem arises because the factual situation here, a vacancy as of January 11, 1979, simply was not foreseen by Congress.

It is a well-settled rule of interpretation "that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, not within the intention of its makers." *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459 (1892). In *Church of the Holy Trinity,* the Court refused to apply to a contract between a religious corporation and a pastor a broadly worded statute that made it a crime to assist an alien's immigration to the United States by entering a service contract with him previous to his entry. There was no doubt that the contract fell "within the letter of this section," *id.,* but the Court relied upon its understanding of the harm the Act was meant to correct, expressed in the legislative history, to hold that the contract nevertheless was not to be included within the prohibition.

The Court has warned countless times "against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, *e.g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 459–462; *Markham v. Catell,* 326 U.S. 404, 409; for " 'literalness may strangle meaning,' *Utah Junk Co. v. Porter,* 328 U.S. 39, 44." *Lynch v. Overholser,* 369 U.S. 705, 710 (1962). The D.C. Court of Appeals has stated this same principle as follows:

> * * * the plain meaning doctrine has always been considered subservient to a truly discernible legislative purpose * * * The use of the legislative history to determine Congressional purpose is appropriate where * * * the literal words of the statute would bring about an end completely at variance with the purpose of the Act * * *. [*Aviation Consumer Project v. Washburn,* 535 F. (2d) 101, 106–107 (D.C. Cir. 1976).]

*See also, Ozawa v. United States,* 260 U.S. 178, 194 (1922) ("We may look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail,") and *Helvering v. New York Trust Co.,* 292 U.S. 455, 464 (1934) ("the expounding of a statutory provision strictly according to the letter without regard to other parts of the Act and legislative history would often defeat the object intended to be accomplished").

This principle of statutory interpretation has frequently been applied to avoid constitutional problems; however, it is by no means limited to such problems. For example *Helvering, supra,* held the capital gains tax provision applicable to property held by a trustee for less than 2 years, despite language in the statute that on its face required that the property be held

more than 2 years. Again, in *United States* v. *Public Utilities Commission,* 345 U.S. 295 (1953), the Court held that although a literal reading of the Federal Power Act would exclude municipalities from the definition of a "person" subject to regulation by the Federal Power Commission, this exclusion had in fact been inadvertent. In such circumstances, intent rather than language, if they do not lead to the same result, should govern. 345 U.S. 316. Similarly, in *United States* v. *American Trucking Association, Inc.,* 310 U.S. 534, 543 (1940), the Court limited the reach of the Interstate Commerce Commission's jurisdiction by reading a narrow interpretation, based on the legislative history, into the word "employee" ("even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,' the Court has followed that purpose, rather than the literal words.") 310 U.S. at 543. A final example of the Court's using the purpose of a statute to discount the literal application of its language is *Johansen* v. *United States,* 343 U.S. 427 (1952). There the Court held that despite the language of the Public Vessels Act, which on its face granted to anyone a right to bring suit against the United States "for damages caused by a public vessel of the United States," Congress had no intention to grant this right to U.S. employees and therefore they were not to be included within its scope.

In sum, "when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' " *American Trucking Association, Inc., supra,* at 543-544. In the case at hand the language is superficially clear, but the factual situation—resignation of a member between January 1 and January 11, 1979—was not one that Congress contemplated. In applying the statute to these facts, the above cases make clear that congressional intent should preempt literal meaning.

The major, expressed intent of Congress in including the transition provision in the Act was to "assure that the new terms of the members of the Board will continue to be staggered." We take the intent to stagger to be an important one, since historically Congress has consistently provided for the systematic staggering of the terms of the heads of the major multimember independent agencies. Quite to the contrary of what Congress intended to achieve by the provision, a literal reading of the transition provision would assure, given the fact of the vacancy, that the new terms of members of the Merit Systems Protection Board would never be systematically staggered. That intent, however, should not be lightly frustrated by a wooden application of the provision designed to effectuate it. This is especially true when such an application would do nothing to further any demonstrable purpose of the provision and is a possibility only because Congress made an assumption of fact that turned out to be erroneous.

We believe that the correct construction of the transition provision is that it continued unchanged, the terms of office of all three members of

the MSPB in existence on the effective date of the Act, whether occupied or not.[14] In our view, this is the only construction that will effectuate the clearly expressed intent of Congress. Moreover, it avoids the unreasonable and unintended result that a congressionally unanticipated vacancy on January 11 should result in a term for the vacant office different from that which would have resulted from a vacancy on any other day, a result different from that which Congress contemplated, and different from that dictated by the intent of Congress ultimately to ensure systematically staggered terms for the members of the Merit Systems Protection Board.

For the reasons stated we believe that the term of the office of member of the Merit Systems Protection Board that Mr. A has been nominated to fill will expire on March 1, 1981.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[14] We note further that the appointment of Ms. P to the MSPB implicitly adopted the interpretation presented here. The position she took was also one that was vacant on January 11, 1979. Her term of office, however, runs from March 1, 1979, which is the date the term of office of the commissioner she replaced would have terminated. This means that it was assumed that the term of office of the member who resigned continued beyond January 11 to March 1, 1979, despite the resignation.