**COMMISSIONER OF INTERNAL REVENUE v. WILSHIRE OIL CO., Inc.**

No. 8656.

Circuit Court of Appeals, Ninth Circuit.

April 1, 1938.

WILBUR, Circuit Judge, dissenting.

James W. Morris, Asst. U. S. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp.Assts. to Atty. Gen., for petitioner.

Joseph D. Brady, of Los Angeles, Cal., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals which revised adversely to the Commissioner his determination of income tax deficiencies for the years 1929 and 1930.

The taxpayer is a California corporation engaged in producing petroleum products from oil and gas leases in Southern California.

Pursuant to section 23 of the Revenue Act of 1928, 26 U.S.C.A. § 23 and note, the taxpayer in its returns for the years in question deducted from its gross income an allowance for depletion on its oil and gas wells. The Commissioner assessed deficiencies based upon his ruling that that al-

lowance was in excess of that permitted by statute.

The question before the Board and on this appeal concerns solely the interpretation of the phrase "net income" of an oil company under the depletion provision of the Revenue Act of 1928. The provision is section 114(b)(3), 26 U.S.C.A. § 114 note: "(3) Percentage depletion for oil and gas wells. In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the *net income* of the taxpayer (computed without allowance for depletion) *from the property*, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph." (Italics supplied.)

The taxpayer, respondent oil company, in its return under the Act of 1928 of income for the years 1929 and 1930, computed the depletion of oil within three properties it owned and upon a leasehold, under a construction of the phrase "50 per centum of the *net income* of the taxpayer (computed without allowance for depletion *from the property*," that net income from the property meant net "operating income." It hence did not deduct the capital expenditure in drilling the wells which capital expenditure might yield it income for a score or longer pumping or flowing years. So computed, its 27½ per cent. of the gross income was less than 50 per cent. of the net, and hence the entire 27½ per cent. was allowable as a depletion.

The Commissioner claimed that the phrase, "net income from the property," does not mean net "operating income," but means net income after also deducting the capital cost of the creation of the producing plant, i. e., the drilling and installing of pipes and structures necessary for pumping during the life of the well. Since 27½ per cent. of the gross income of the property exceeded 50 per cent. of the net income after the deduction of the capital development expense, the Commissioner allowed, as depletion only, this 50 per cent. of the net. His deficiency assessment increased the total taxable income of the taxpayer by the difference between the depletion as so computed and the computation of the taxpayer.

The phrase "net income from the property" has appeared in the depletion allowance provisions of the income tax act, first, in 1921,[1] and since then in *three* re-enactments—1924,[2] 1926,[3] and 1928.

Under the 1921 Act, the Commissioner's depletion Regulation limited the deductions in determining the net income of the property to "operating expenses."[4]

When the provision was reenacted in 1924, the phrase "net income from the property" was defined by the report of the Senate Committee as "operating profit." It reads: "The exception contained in subdivision (c) supersedes the second and third provisos of section 214(a)(10) and 234(a)(9) of the existing law. The existing law limits discovery depletion to the *operating profit* from the property upon which the discovery is made. The bill limits discovery depletion to 50 percent of the *operating profit* from the property upon which the discovery has been made."

Under the 1924 act the Treasury promulgated the same depletion regulation as for the 1921 act, i. e., confining the deductions to determine income from the property, i. e., "operating expenses."

[1] Sec. 234(a)(9), 42 Stat. 254, 256. "Such depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made."

[2] Sec. 204(c), 43 Stat. 258, 260. "But such depletion allowance based on discovery value shall not exceed 50 per centum of the net income (computed without allowance for depletion) from the property upon which the discovery was made."

[3] Section 204(c)(2), 44 Stat. 14, 16. "In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property."

[4] "(h) Net income is the gross income from the sale of all mineral products and any other income incidental to the operation of the property for the production of the mineral products, less operating expenses, including depreciation on equipment, and taxes, but excluding any allowance for depletion. * * * Operating expenses, depreciation, and taxes on the property upon which the discovery is made, should be applied against the gross income from the same property on the basis of actual expenditures." Revenue Act 1921, Regulations 62, Art. 201 (h).

We thus have the use of the phrase in the 1924 act determined by both the Treasury and the Congress as "operating" profit or income. It is admitted by the Commissioner that, at least until shortly before the 1928 re-enactment of the percentage depletion clause, in all cases determining oil depletion by the percentage provisions, the clause was administered under a construction of the phrase "net income from the property" which excluded these capital development expenditures from the deductions determining such net income.

Congress reenacted the phrase in 1926 and the Treasury regulation repeated its limitation of the deductions to "operating expenses."[5]

When the 1928 taxing act here in question was passed, the law thus had been made plain that "net income from the property" means net "operating" income. We are thus required so to interpret the 1928 act under the rule reiterated by the Supreme Court in the recent case of Biddle v. Commissioner, 58 S.Ct. 379, 383, 82 L.Ed. ——, decided January 10, 1938: "Where the law is plain the subsequent re-enactment of a statute does not constitute adoption of its administrative construction. Iselin v. U. S., 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566; Louisville & N. R. Co. v. U. S. [282 U. S. 740, 51 S.Ct. 297, 75 L.Ed. 672; Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361], supra."

Though the Treasury for years so interpreted the phrase and administered the law, and though the Congress so fixed its meaning, the Commissioner claims that by a regulation under the 1928 act, that act no longer means what it meant when the Congress passed it. Instead of "operating" income, it has been transformed by the subsequent regulation into net income after the deduction of the capital item of expense in drilling and otherwise developing the well before its operation. This regulation claimed to overrule both the law as "plainly" established and the prior regulation is: "This phrase 'net income of the taxpayer (computed without allowance for depletion)' means the gross income from the sale of oil and gas less the deductions in respect to the property upon which depletion is claimed, including overhead and operating expenses, development expenses (if the taxpayer has elected to deduct development expenses), depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion." Revenue Act 1928, Art. 221(i), Regulations 74.

The Commissioner urges several arguments in support of this contention. The first is that the parenthetical phrase in the 1924 act and all succeeding acts, i. e., "shall not exceed 50 per centum of the net income of the taxpayer *(computed without allowance for depletion)* from the property," by the *exclusion* of "depletion" from the allowable deductions, requires the *inclusion* in deductions of the capital development items. It is a sufficient answer to this argument that the phrase "(computed without allowance for depletion)" was in the act of 1924 when the Senate Committee recommended the legislation as basing the depletion allowance on "operating profit," and when the Treasury, following the Senate interpretation, confined its deductions to "operating expenses." It was in the 1926 reenactment of the depletion clause after both Senate and Treasury interpretation had excluded such *capital* expenditures from an *income* computation.

The next argument is that though the tax liability was incurred in the tax years 1929 and 1930, it was not governed by the plainly established meaning of the words "net income from the property" when the legislation was enacted in 1928, but by the contrary regulation, because *two years later,* in 1932, the Congress reenacted the depletion clause without change. It is a sufficient answer to this contention that *when the tax liability* was incurred the meaning of "net income from the property" was as plain as Congressional declaration and legislative approval of the Treasury's ruling could make it. Under the rule in Biddle v. Commissioner, supra, taxpayers in making their returns are entitled to rely upon the law as it then is. They are not required to have the prescience to discern a difference in Congressional viewpoint two years in the future. Penn Mutual Life Ins. Co. v. Lederer, 252 U.S. 523, 538, 40 S.Ct. 397, 64 L.Ed. 698. It may be hereafter argued that despite the rule in the Biddle Case, and though net income from the property is plainly determined in the 1928 act, and

---

[5] "Less the deductions in respect to the property upon which the discovery is made including operating expenses, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion." Revenue Act 1926, Regs. 69, Art. 201 (h).

the contrary regulation thereunder is now invalid, the reenactment of the phrase in 1932 should be regarded as an amendment of the 1928 act. However, this is a question we are not called upon to decide in a case involving taxes on income for 1929 and 1930.

Another argument is that, without change in its regulations, the Treasury's *practice* in 1927 was contrary to the plain and established meaning of the words in the act of 1926, then controlling, and taxes were assessed for some months before the 1928 act with a capital deduction in depletion determination. The claim is that the Congress is deemed to have known of the practice in violation of its declared interpretation and ratified it in the re-enactment of 1928.

We have searched the record in vain for any proof of such a claimed practice. Much less is there anything within or without the record suggesting that Congress knew of such a practice. It certainly is not proved by attempting to have us consider the claimed "General Counsel's Memorandum" 2315, published September 25, 1927, in which that counsel gave his unsolicited opinion, in effect that the Congress and the Treasury were wrong when they interpreted net income as net "operating" profit or income. The Commissioner's brief here lacks the candid admission of his brief in the case of Ambassador Petroleum Co. v. Commissioner, 9 Cir., 81 F.2d 474, 481, where he stated: "The Commissioner's interpretation was embodied in a General Counsel's Memorandum, which, together with I. T.'s and other informal rulings does not have the force or effect of Treasury Decisions and does not commit the Department to any interpretation of the law. See cautionary notice published in the Internal Revenue Bulletins; also Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361."

■ The New York Trust Company Case clearly shows that such a memorandum opinion is evidence neither of a practice following the recommendation or of notice to us or the Congress of such a practice. Nothing is shown here but the ipse dixit of the brief. The taxpayer is as much entitled to proof of the practice as the government is of proof of facts of the claimed deductions.

Another argument is that although it is plainly established that the net income *from the oil property* of the depletion clause of the act is "operating" income, that plain interpretation by the Congress and the Treasury is wrong because a *regulation affecting calculations entirely different from the depletion,* gives the anomalous option to the taxpayer to deduct his capital development expenses in computing his entire income *from all sources.*[6] Without considering that the exercise of this option ties the taxpayer *in all future years to its exclusive use,* the argument is made that since the regulation permits the taxpayer to apply inconsistent methods of computation which in a particular tax year may be to his benefit, therefore, the congressional intent, plainly determining the depletion allowance, is wrong.

It is a sufficient answer to this contention that when the Congress decided, in 1924 and 1926, that the depletion allowance was calculable on an operating profit basis, the anomalous regulation allowing the deduction of capital expenditures from gross general income was in effect. When the "operating" depletion rule received congressional recognition and approval, the Congress knew the taxpayer had the right to compute his total net income by deducting capital oil development expenditures from his gross income. Nevertheless it based the depletion allowance on net operating income. In this case, the Oil Company, by its election in 1925, had bound itself to deduct its

---

[6] Treasury Regulations 74, promulgated under the Revenue Act of 1928:

"Art. 243. Charges to capital and to expense in the case of oil and gas wells.—

"Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as a development expense or charged to capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as a development expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells. An election once made under this option will control the taxpayer's returns for all subsequent years. * * * *"

capital development expense in determining its total net taxable income, and omit such capital expenditures from its capital account, *for all time in the future* under the provision of the regulation that, "An election once made under this option will control the taxpayer's returns for all subsequent years."

A further answer is that, while *by the regulation* we have the inconsistency of deducting capital expenditures from general gross income, and not deducting them in net income from a particular oil property, which may be advantageous to the taxpayer in a particular tax year, the government may gain greatly in the future by the requirement that the taxpayer must always thereafter omit his *capital* development expenditures from his capital account. The fact that the *regulation* compelled such future accounting, implies that the Treasury contemplated such a beneficial result to its revenues.

The regulation requiring the capital development expenditures to be deducted from current income instead of being capitalized, is not tied to any method of depletion or depreciation. Hence it may well be that over a period of years the loss of tax by a total deduction in the year of expenditure will be more than compensated by the facts (a) that gross income from oil production will increase with the increased price due to inevitable depletion of the world's supply, and hence the income come within the higher percent brackets; (b) the tax brackets of future legislation will be much higher, and (c) depreciation and (d) depletion deductions much less, without the capital development expenditures in the amount on which these future items are calculated.

That the tax rates will increase and deductions will become more scant is not a mere fanciful conjecture. The Supreme Court has given warning of this in its recent case of Helvering v. Mountain Producers Corporation, 58 S.Ct. 623, 626, 82 L.Ed. ——, decided March 7, 1938, where it was pressed to reconsider (and overrule) prior decisions because of the "expanding needs [for revenue] of state and nation." In successive years the rate of taxation on corporate income has increased, and pending bills show the corporate burden certain of continuing future increase.

That the world supply of petroleum is limited and that rising prices for oil and gas will inevitably ensue is recognized both by the government and the industry.

That the congressional allowances for depletion are shrinking is shown by the 1924 act reducing the 100 per cent. of the net of the 1921 act to the 50 per cent. of the net as the maximum, and two years later by the 1926 allowing the 27½ per cent. of the gross receipts, only if it did not exceed 50 per cent. of the net.

It is therefore apparent that the regulation creating the anomaly of allowing in a particular first year the capital development deductions from general gross income, *tied to a compulsion to follow this method in future years,* affords no argument that the Congress was wrong when it plainly made the depletion deduction computable on net "operating" income and hence did not require a "net" after deduction of capital development expenditures.

The fact that the 1926 and 1928 act may be construed as also permitting a computation of full *actual* depletion,[7] as an alternative to the percentage method, adds nothing to the Commissioner's argument. The added alternative may be revoked at any time. It does not affect the bargain with the taxpayer on an entirely different matter, i. e., the perpetual future deduction of capital development expenditures from gross income.

The double deduction argument has weight only when excluding these necessary future effects of the regulation on which it is based. The Commissioner's brief, failing to mention the above matters fully considered in our opinion in Ambassador Petroleum Co. v. Commissioner, supra, much less to attempt to distinguish or overcome them, is not persuasive to a court in which the Commissioner seeks an overruling of that case.

Affirmed.

WILBUR, Circuit Judge (dissenting).

I dissent. I adhere to the view expressed by me in the dissenting opinion in Ambassador Petroleum Co. v. Commissioner of Internal Revenue, 9 Cir., 81 F.2d 474, 483. Notwithstanding that, in view of the majority decision in that case, I would

---

7 "in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

Revenue Act 1928, § 114(b)(3), 26 U.S. C.A. § 114 note.

concur in the result in the case at bar on the theory that the language of section 114 (b) 3, of the Revenue Act of 1928, 26 U.S.C.A. § 114 note, is not sufficiently clear to justify a reconsideration of the decision in Ambassador Petroleum Co. v. Com'r, supra, and that, therefore, the parties should be left to their remedy in the Supreme Court. If I agreed with my brethren that the meaning of the statute involved was entirely clear, I would also agree with their conclusion that the new rule of the Commissioner under the Revenue Act of 1928 could not change the plain language of the statute. However, the statute expressly requires the Commissioner to adopt rules for the determination of the depletion allowance. He has done so. Under those rules so adopted the additional tax determined by the Commissioner accrued. To uphold the tax under the new rule is not inconsistent with the decision of the court in Ambassador Petroleum Co. v. Com'r, supra. Because of the changed situation it is not necessary to overrule that decision in order to reverse the decision of the Board of Tax Appeals herein.