## COMMISSIONER OF INTERNAL REVENUE v. F. H. E. OIL CO. *
### Nos. 8800, 8801.

Circuit Court of Appeals, Fifth Circuit.
March 21, 1939.

---

*Writ of certiorari granted 59 S.Ct. 827, 83 L.Ed. —.

---

Arnold Raum, Sewall Key, and Ellis N. Slack, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Harry C. Weeks, of Fort Worth, Tex., for respondent.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

These two cases present petitions by the Commissioner of Internal Revenue to reverse decisions by the Board of Tax Appeals. They involve identical questions of fact and law and may be conveniently disposed of by one opinion. The Commissioner disallowed certain deductions by the taxpayer, F. H. E. Oil Company, in making its returns for 1932 and 1933 and determined deficiencies respectively of $8,419.04 and $10.841.76. The Board reversed the Commissioner and redetermined deficiencies as $76.97 and $1,721.46 for the respective years. The redetermination by the Board involved a number of separate items. Only those dealing with allowances for depletion are before us for consideration.

The Revenue Act of 1932, which governs, provides as follows:

Sec. 23(*l*) "*Depletion.* In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary." 26 U.S.C.A. § 23(m).

Sec. 114(b) (3) "*Percentage depletion for oil and gas wells.* In the case of oil and gas wells the allowance for depletion [under section 23(m)] shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance [under section 23(m)] be less than it would be if computed without reference to this paragraph." 26 U.S.C.A. § 114(b) (3).

Treasury Regulations 77, promulgated under the 1932 Act, so far as necessary to quote, are as follows:

Art. 221. (h) "'Net income of the taxpayer (computed without allowance for depletion) from the property,' as used in section 114(b) (2), (3), and (4) and articles 221 to 248, inclusive, means the 'gross income from the property' as defined in paragraph (g) less the allowable deductions attributable to the mineral property upon which the depletion is claimed and the allowable deductions attributable to the processes listed in paragraph (g) in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion."

Art. 236. (1) "Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs."

The material facts are not in dispute. The taxpayer, F. H. E. Oil Co., is a Texas corporation, organized in 1925. It has an economic interest in a number of oil wells

in the West Texas Oil Field entitling it to take deductions for depletion. Since beginning business respondent has consistently capitalized certain items of intangible drilling and development costs, such as physical property having salvage value, together with the cost of installing it, but has deducted other items so classified as expense, in determining its net income returnable for taxation.

The Commissioner allowed as depletion 27½% of the gross income from each oil well or 50% of the net income, whichever was lower. In determining the amount of net income he included in the items to be deducted from gross income the amount of intangible drilling and development costs deducted on its returns by the taxpayer as expense. The Board overruled the Commissioner, on the authority of the following decisions: Ambassador Petroleum Co. v. Commissioner, 9 Cir., 81 F.2d 474, Mountain Producers Corp. v. Commissioner, 34 B. T. A. 409, and Wilshire Oil Co., Inc., v. Commissioner, 35 B. T. A. 450, subsequently affirmed in Commissioner v. Wilshire Oil Co., Inc., 9 Cir., 95 F.2d 971.

The decision in Ambassador Petroleum Co. v. Commissioner, supra, deals with the 1926 Act. It reversed the Board and has been consistently followed by the Board ever since. The Court considered the rule of legislative approval urged by the Commissioner and turned it against him. Based upon the history of the law and Treasury rulings, the Court concluded, for the purpose of computing depletion, net income and operating profit are synonymous and held that development costs deducted as expense should be excluded in computing net income. The case of Commissioner v. Wilshire Oil Co., Inc., supra, dealing with the Revenue Act of 1928, follows the same line of reasoning. We do not find these decisions persuasive.

The revenue acts of 1918 to 1921, inclusive, contained provisions allowing deduction of a reasonable allowance for depletion of oil and gas wells, based on cost, including cost of development, not otherwise deducted. The Revenue Act of 1924 continued this allowance for depletion on the cost basis, with the limitation that the deduction should not exceed 50% of the net income from the property, computed without allowance for depletion. The Revenue Act of 1926 made a radical change as to the basis for computing an allowance for depletion. The act provided for a de-

duction for depletion, based on cost, in computing the gain or loss resulting from a sale or other disposition of the property, and also for an annual deduction for depletion, measured by 27½% of gross income, but not exceeding 50% of the net income, computed without allowance for depletion. These provisions have been continued in all subsequent revenue acts, practically the same as in the 1932 Act, as above quoted.

Treasury Regulations promulgated under the 1926 Act were silent as to the method of computing depletion by the percentage method. Under the 1924 Act the Commissioner had ruled that net income meant net operating revenue and excluded development costs in computing it. For awhile this practice was continued under the 1926 Act but was changed on September 26, 1927, and the present practice was adopted. See G. C. M. 2315, VI-2 Cumulative Bulletin 21. Thereafter, beginning with Treasury Regulations 74, under the 1928 Act, regulations were adopted substantially the same as those adopted under the 1932 Act, above quoted.

■ The Commissioner contends that the rule of legislative approval is in his favor, relying upon U. S. v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893, and other decisions. We agree with that contention. His decisions under the previous acts were certainly not approved by the enactment of the 1926 statute, 44 Stat. 9. Nor do we think the short time he applied the old rule under the 1926 Act estopped him from changing it, if convinced he was wrong. After the Commissioner had changed his ruling, the pertinent provisions of the 1926 Act were reenacted in the 1928 and subsequent revenue acts without substantial change. However, the decision of the question presented does not depend upon the application of the rule.

The revenue laws adopted before the 1926 Act show conclusively that if costs of development were deducted as expense they could not thereafter be added to increase the basis for depletion. We find nothing in the subsequent statutes tending to show Congress intended to adopt a different principle when depletion is deducted annually and determined by the percentage method.

■ The deduction of intangible costs of drilling and development from gross income reduces the net income upon which taxes are assessed. If there was no allow-

ance for depletion the tax would be paid on that basis. The statute is plain and unambiguous. Necessarily, if development costs are excluded in computing net income, in those instances where 27½% of the gross income exceeds 50% of the net income, they enter into and add to the basis for depletion. The only reasonable construction of the statute is that net income, computed without allowance for depletion, means what is left after every allowable item, except depletion, is deducted from gross income.

The regulations are reasonable, fair to the taxpayer and conform to the intention of Congress. We consider that when a taxpayer elects to deduct intangible costs of drilling and development as expense that item must be treated the same as all other deductible items in computing net income. The Commissioner was right in including such deductions in determining net income for the purpose of applying the 50% limitation.

The petition is allowed, the judgment of the Board is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.