**COMMISSIONER OF INTERNAL REVENUE v. CHICAGO PORTRAIT CO.**

No. 4434.

Circuit Court of Appeals, Seventh Circuit.

June 11, 1931.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and A. H. Conner, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Albert L. Hopkins, Arnold R. Baar, and Herman T. Reiling, all of Chicago, Ill., for respondents.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Review is sought of a ruling of the Board of Tax Appeals which sustained respondent's contention that it was entitled to deduct from its federal income tax for the year 1923, the amount of an income tax for that year which it was required to pay upon its business done in New South Wales. 16 B. T. A. 1129.

Respondent company is an Illinois corporation, and in the year in question owned 51 per cent. of the voting stock of a subsidiary corporation of New South Wales. For that year the Commissioner credited upon the income tax here returned income taxes of the subsidiary corporation levied by, and paid to, the commonwealth of Australia and the Dominion of New Zealand, but refused to credit thereon any part of the income taxes paid by it to New South Wales.

The question involved is whether New South Wales comes within the designation "any foreign country," as employed in section 238 of the Revenue Act of 1921 (42 Stat. 258); the applicable part of which is: "Sec. 238 (a) That in the case of a domestic corporation the tax imposed by this title, plus the war-profits and excess-profits taxes, if any, shall be credited with the amount of any income, war-profits, and excess-profits taxes paid during the same taxable year to any foreign country, or to any possession of the United States. * * *"

New South Wales has been a British possession ever since Captain Cook visited it in 1770. Responsible government was conferred upon it in 1855, with a "legislative counsel" appointed by the crown and an "elective legislative assembly." It was entirely separate and distinct from the other Australian colonies of Great Britain.

In 1900 the commonwealth of Australia came into existence through a pact, to which New South Wales was a party, which adopted a Constitution delegating certain designated powers to the government of the commonwealth. In respect to other matters the constituent parties remained as they were before, each carrying on its own government, very much as with the states of the United States.

This grant of powers to the commonwealth left New South Wales none the less a self-governing colony. It had and has the power to levy taxes. Income taxes were levied by it before it entered the commonwealth, and have been ever since, under its sovereign authority to levy such taxes.

The word "country" cannot be given a hard and fast definition, applicable alike to every situation in which it is employed. Petitioner places much reliance upon the manner of its use in the case of Stairs v. Peaslee, 18 How. 521, 526, 15 L. Ed. 474, where there was involved a question of appraisal of imported goods for tariff purposes. The law required the value to be such as the imported article had at the principal markets of the country from which exported. The article there in question had been shipped from India to Nova Scotia, where there was practically no market for such product, and thence reshipped to the United States.

The importer contended that the appraisal should be based on Halifax, N. S., value, but the appraisers fixed the value as that of London and Liverpool, finding them to be the principal markets for the article of the country whence imported. The court held that under the revenue law it was not a question of law but of fact for the appraisers to decide which place in the entire British dominion was the principal market therefor, saying, "the word country in the revenue laws of the United States has always been construed to embrace all the possessions of a foreign State however widely separated, which are subject to the same supreme executive and legislative control."

The opinion discloses also a very good reason for limiting its application to cases where import duties were involved. The court said: "And, moreover, if the construction contended for by the plaintiff could be maintained, it would soon be found that goods would not generally be exported directly to the United States, from the principal market where they were procured, but sent to some other place where they were not in demand, to be shipped to this country, and invoiced far below their real value. The case before us shows what may be done to evade the pay-

ment of the just amount of duty; and neither the words of any revenue law, nor any policy of the government, would justify a construction alike injurious to the public and to the fair and honest importer."

Since that decision the political status of New South Wales and of some other British colonies has materially changed, so that they now far more nearly partake of the attributes of sovereign, self-governing nations, especially in their commercial relations. It is at least interesting to note that the opinion was rendered in 1855, the same year in which responsible government was first conferred upon New South Wales.

Indeed, if Stairs v. Peaslee were held applicable to section 238 (a) as applied to the entire British Empire, no income tax imposed by any British colony could be deducted, since only such British income taxes as were imposed by the government of Great Britain alone would be deductible. Neither income taxes of the Australian commonwealth, nor of New Zealand, which were in fact deducted, nor of Canada, or other independent self-governing colony would be deductible.

The evident purpose of section 238 is to prevent duplication of income and war-profits taxation upon the same income, and there is no logical reason why the deduction which the section undertakes to authorize should be that of one form of government or of another, so long as the country by which the tax is levied, and to which it is paid, is foreign to the United States.

We see no reason why the proper administration of section 238 would authorize deduction of such taxes when paid to the commonwealth of Australia or to New Zealand, or both, and be denied when paid to the self-governing colony of New South Wales.

The judgment of the Board of Tax Appeals is affirmed.