JANNEY et ux. v. COMMISSIONER OF INTERNAL REVENUE.

No. 7130.

Circuit Court of Appeals, Third Circuit.

Dec. 26, 1939.

Bernhard Knollenberg, of New York City (Lord, Day & Lord and Harry J. Rudick, all of New York City, of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to Atty. Gen., for respondent.

Before BIDDLE, JONES, and BUFFINGTON, Circuit Judges.

BIDDLE, Circuit Judge.

The petitioners were married and living together in 1934. Mrs. Janney realized

gains and Mr. Janney losses in that year on the sale of capital assets. They filed a joint income tax return in which the losses were used to offset the gains. Except to the extent of $2,000 the Commissioner of Internal Revenue disallowed all the losses, on the ground that the losses of one spouse could not be set off against the gains of the other. The Board of Tax Appeals sustained the Commissioner, and this appeal followed.

The statutory provisions involved are found in the Revenue Act of 1934. Section 51(b)[1] provides:

"(b) Husband and wife. If a husband and wife living together have an aggregate net income for the taxable year of $2,500 or over, or an aggregate gross income for such year of $5,000 or over—

"(1) Each shall make such a return, or

"(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income."

Section 23[2] of the act provides, with respect to capital losses:

"In computing net income there shall be allowed as deductions:

*　*　*　*　*　*

"(j) Capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117 [101] (d)."

The relevant part of Section 117(d)[3] is as follows:

"Limitation on capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges."

The decision of the Board is supported by the authority of the Second, First and Fourth Circuits respectively in Pierce v. Commissioner, 100 F.2d 397, 398; Sweet v. Commissioner,[4] 102 F.2d 103, 121 A.L.R. 647; and Nelson v. Commissioner, 104 F.2d 521, involving the construction of the Act of 1932, a similar statute.[5] Judge Learned Hand dissented vigorously in the Pierce case; and the two later decisions, noting the doubt without expanding the reasoning, followed the precedent of the

[1] 26 U.S.C.A. § 51(b).
[2] 26 U.S.C.A. § 23(j).
[3] 26 U.S.C.A. § 101(d).
[4] Application for certiorari denied, 307 U.S. 627, 59 S.Ct. 829, 83 L.Ed. 1510.

Certiorari was also denied in Demuth v. Commissioner, 2 Cir., 100 F.2d 1012; Id., 307 U.S. 627, 59 S.Ct. 822, 83 L.Ed. 1510.
[5] Section 23 (r) of the Revenue Act of 1932, 26 U.S.C.A. § 23 note.

majority.[6] In the Pierce case Treasury Regulation 77, Art. 381, provided that where "the income of each is included in a single joint return, the tax is computed on the aggregate income and all deductions or credits to which either is entitled shall be taken from such aggregate income." Section 23(r)[7] of the Act of 1932, which was before the court, limited stock losses to "losses from sales or exchanges of stocks * * * which are not capital assets [i. e. held less than two years] * * * only to the extent of the gains from such sales or exchanges * * *." The majority reasoned that neither taxpayer, under this limitation, could take the deduction, since the wife had no gains, and the husband could not deduct the loss of another taxpayer. Judge Hand, accepting the Regulation, could find no preference for a construction of the statute holding that this clause "imposes a condition upon the privilege, as opposed to a limitation upon its amount." [100 F.2d 398.] He argued that when the Act required the tax to be computed on the net aggregate income it meant the balance after adding all the items of gross income and subtracting all deductions. The limit on stock losses would then "be the aggregate of 'non-capital' gains of both spouses, and to single out those of the spouse who has 'non-capital' losses is to trace into the account the several sources of the 'aggregate income', which is precisely what the account need not, and should not, do."

■ With this reasoning we agree. Other allowable deductions in excess of gross income of one spouse may be deducted from the net income of the other, for otherwise there would be no point in filing a joint return. Thus the right to file the joint return involves the necessity of disregarding the source from which the deduction is derived. The Government suggests that husband and wife cannot be regarded as a joint entity—have not been by the cases construing tax statutes. But that seems to us unconvincing in considering whether a statute authorizing a single return for both does not also contemplate a consolidation of the losses and gains of both, a more rational and more direct construction of a statute evidently intended by Congress to be in favor of the taxpayer.[8] Since the statute provides that in the case of a joint return "the tax shall be computed on the aggregate income" it logically and indeed necessarily follows, in the absence of an express statutory provision to the contrary, that in arriving at joint net income both gross income and deductions of the spouses must be aggregated and treated as the income and deductions of a single taxpayer.

We must now consider the effect of Regulation 86, Art. 117-5, promulgated under the Act of 1934. This article is as follows: "Application of section 117 in the case of husband and wife.—In the application of section 117 a husband and wife, regardless of whether a joint return or separate returns are made, are considered to be separate taxpayers. Accordingly the limitation under section 117(d) on the allowance of losses of one spouse from sales or exchanges of capital assets is in all cases to be computed without regard to gains and losses of the other spouse upon sales or exchanges of capital assets."

■ Prior to the promulgation of Art. 117-5, Art. 381 had been in effect, unchanged, for many years, and had been sanctioned by the reenactment of a number of statutes, including the Act of 1934. The Commissioner of Internal Revenue had, on December 29, 1932, when the question was submitted to him, expressed the opinion that "the loss sustained by the husband would offset the same amount of gain realized by the wife from such source."[9] Therefore, up until the time when Art. 117-5 was issued, we have a construction by the Commissioner in favor of the tax-

[6] In the Sweet case the court said [102 F.2d 105, 121 A.L.R. 647]: "While the decision of the Court of Appeals for the Second Circuit may involve some doubt we do not regard it as clearly wrong and, being squarely in point, we follow it." In the Nelson case too the court felt constrained to recognize the impressiveness of the dissent. "While a majority of this Court are much impressed with the reasoning of Judge Learned Hand in his dissenting opinion in the Pierce case, the legal question involved is a close one and we feel that we should follow the decisions of the First and Second Circuits, particularly in view of the denials of certiorari by the Supreme Court."

[7] 26 U.S.C.A. § 23, Historical Note (r).

[8] See Commissioner v. Thomas, 5 Cir., 84 F.2d 562, 563: "Section 51, supra [permitting husband and wife to file a joint return] is clearly intended by Congress to be in favor of the taxpayer."

[9] C.C.H.Fed.Tax Ser.1933, III, Par. 6037.

payer, in accordance with Judge Hand's view of the meaning of the Act and of Art. 381. The Commissioner now takes the position that his former opinion is "informal" and inconsistent with the new regulation. It is not, of course, a treasury regulation, and does not have the validity or effect of a regulation. Helvering v. New York Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361; Biddle v. Commissioner, 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431. But it is a treasury interpretation of the meaning of the statute, an interpretation which is altered in the new regulation. We think that Art. 117-5 is not a construction warranted by the words of the section permitting the *joint return, words* which, in our opinion, are unambiguous and clear from substantial doubt.

In coming to this conclusion we have considered the rule of law which holds that in interpreting a statute we should give great weight to the administrative construction of the law where, after a ruling has been prescribed, the section of the statute to which it applies is enacted in the same words. The Commissioner argues that the text of Art. 117-5 was included in the regulations issued under the Revenue Acts of 1936 and 1938, and that a provision limiting the deduction of capital losses was reenacted in both of these acts, showing legislative approval of the regulations. But Section 51(b) was not reenacted in 1938. The section was changed to read: "(b) Husband and wife.—In the case of a husband and wife living together the income of each (even though one has no gross income) may be included in a single return made by them jointly, in which case the tax shall be computed on the aggregate income, and the liability with respect to the tax shall be joint and several. No joint return may be made if either the husband or wife is a nonresident alien." 26 U.S.C.A. § 51(b). The construction, therefore, expressed in Art. 117-5 "was neither uniform, general, nor long-continued * * *." Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed 566. In most of the cases where the rule has been invoked the administrative act has been approved by successive enactments without change, and emphasis is laid, in the application of the rule, on the extended continuity of the construction. New York, New Haven & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 401, 26 S.Ct. 272, 50 L.Ed. 515; Copper Queen Consol. Mining Co. v. Territorial Board of Equalization of Arizona, 206 U.S. 474, 479, 27 S.Ct. 695, 51 L.Ed. 1143; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.[10]

But administrative regulations are not conclusive, but are at most decisions which can be changed, and afford to the courts in the ultimate test nothing more than persuasive rules of construction. It has never been said that administrative action removes the statute from the field of judicial construction. As Judge Learned Hand remarked, in F. W. Woolworth Co. v. United States, 2 Cir., 91 F.2d 973, 976: "At most, administrative practice is a weight in the scale, to be considered, but not to be inevitably followed. * * * To suppose that Congress must particularly correct each mistaken construction under penalty of incorporating it into the fabric of the statute appears to us unwarranted; our fiscal legislation is detailed and specific enough already. While we are of course bound to weigh seriously such rulings, they are never conclusive * * *." If this were not so, regulations stratified by the "sanction" of law would lose all requisite flexibility. The principle "does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers."[11]

The decision of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings in conformity with this opinion.

---

[10] An exception is found in Hassett v. Welch, 303 U.S. 303, 312, 58 S.Ct. 559, 82 L.Ed. 858, where an amendment to the Federal Estate Tax was passed in 1931, and had been construed by a treasury regulation in 1932, and reenacted in 1933.

[11] Helvering v. Wilshire Oil Co., Inc., 60 S.Ct. 18, 24, 84 L.Ed. ——, decided November 6, 1939.