# ALUMINUM CO. OF AMERICA v. UNITED STATES.

## No. 7675.

Circuit Court of Appeals, Third Circuit.

Oct. 31, 1941.

William B. Waldo, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and Charles F. Uhl, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellant.

Paul G. Rodewald, of Pittsburgh, Pa. (David B. Buerger and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa., on the brief), for appellee.

Before CLARK, JONES, and GOOD-RICH, Circuit Judges.

JONES, Circuit Judge.

The question involved on this appeal concerns the amount of credit allowable to a domestic corporation against its income tax liability for income which it receives from a foreign subsidiary as dividends from profits upon which the subsidiary paid foreign income taxes for the same year. The answer depends upon the interpretation to be given Sec. 238(e) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, pages 189, 190, which, in part here material, provides that: "(e) * * * a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends * * * in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country * * *, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: * *. The term 'accumulated profits' when used in this subdivision in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; * * *."

The following is summarized from the facts as stipulated by the parties in the court below to which the case was tried without a jury.

The plaintiff, a Pennsylvania corporation, was the owner of all of the voting stock of the Aluminum Company of Canada, Ltd., a Canadian corporation. In the year 1927, the foreign subsidiary had total profits of $2,879,101.63, upon which it paid income and profits taxes to the Dominion of Canada and provinces thereof in an aggregate amount of $214,168.13, leaving $2,664,993.50 of accumulated profits as defined by the above quoted provision of the Act. In the same year, the subsidiary paid to the plaintiff from its accumulated profits a dividend of $1,000,000. The plaintiff, in returning the dividend as a part of its 1927 income, took credit against its domestic tax liability, under the Revenue Act of 1926, to the extent of $80,365.09 of the foreign income taxes paid by the subsidiary. The Commissioner disallowed the credit, as thus claimed, but did allow a credit in the sum of $74,357.14. The plaintiff paid its tax on the basis of the reduced credit and then sued for refund because of the disallowed portion of the credit.

The difference in amount between the credit claimed and the credit allowed is due to the differing factors taken into consideration by the parties in their respective calculations. Thus, the plaintiff claims as credit the proportion of the total foreign tax paid by the subsidiary for the critical tax year which the dividend received by the plaintiff in that year bore to the foreign subsidiary's accumulated profits for the same year. The defendant, on the other hand, takes as the tax credit base, only that proportion of the subsidiary's total foreign taxes for the year which its accumulated profits for the year bore to its total taxable profits for the year and, to that base, it then applies the ratio of dividends to accumulated profits, as prescribed by the Act. The court below approved the plaintiff's method of calculating the credit and entered the judgment from which the defendant took the pending appeal.

There is no disagreement between the parties, nor could there be any under the Act, that the tax credit allowable to a domestic corporate owner on account of the foreign taxes paid by its subsidiary is the proportion thereof which the dividends received by the domestic corporation from its subsidiary bear to the subsidiary's accumulated profits. The matter in dispute is as to the amount of the foreign tax to

which the admitted credit ratio shall be applied. Stated as a formula, the plaintiff's method of ascertaining the allowable tax credit is

$$\frac{\text{Dividends Received}}{\text{Accumulated Profits}} \times \text{Foreign Tax paid on the year's total profits} = \text{Credit.}$$

The defendant states its formula as

$$\frac{\text{Dividends Received}}{\text{Accumulated Profits}} \times \text{Foreign Tax paid upon accumulated profits} = \text{Credit.}$$

But, in order to ascertain what the defendant chooses to consider as the tax on the accumulated profits, it is necessary to prorate the total foreign tax on the basis of accumulated profits to total profits. Consequently, the defendant's formula becomes

$$\frac{\text{Dividends Received}}{\text{Accumulated Profits}} \times \frac{\text{Accumulated Profits}}{\text{Total Profits}} \times \text{Foreign Tax paid on the year's total profits} = \text{Credit.}$$

So much, the defendant concedes. It states in its brief that "the complete formula is dividends over accumulated profits, times (accumulated profits over total profits times total tax) * * *."

It is apparent that, upon simplifying the defendant's equation, by cancelling the identical numerator and denominator ("Accumulated Profits"), the defendant's formula reduces to dividends received over total profits times total foreign tax equals the credit. This, the plaintiff contends, fails to give effect to accumulated profits as the denominator of the fraction which the statute prescribes for apportioning the tax allowable as a credit. The defendant answers that its equation is the necessary result of the requirement of the Act which provides that the credit fraction shall be applied to the foreign taxes "upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid." From this, the defendant argues that the foreign tax on the total profits must first be prorated to reflect the portion thereof attributable to the accumulated profits which, as the Act defines, are the corporation's gains in excess of its income and profits taxes, i. e., the profits after payment of the taxes thereon.

The important inquiry, therefore, is whether the statutory phrase upon which the defendant relies was intended to mean what the defendant imputes to it or whether it was intended merely to make certain that the foreign taxes for which credit is claimed were paid on the subsidiary's total income out of which the dividend was distributed after payment of the foreign corporation's tax on its total profits. Strictly speaking, an income tax cannot be said to have been levied "upon or with respect to" the residual profits after deduction from the total net income of the income taxes paid with respect thereto. The tax is imposed upon and with respect to the total net income. And, obviously, the profits from which dividends are paid can in no event be other than the residual net profits after payment of the income taxes assessed upon the total net income. The payment of taxes on the total taxable income necessarily precedes any distribution of the income.

It so happens that the formula which the defendant advances for ascertaining the tax credit reduces to the same equation which Sec. 240(c) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1082, had previously prescribed, viz., dividends received over total taxable income times total tax equals the credit. It is of no present materiality that the 1918 provision made no allowance for tax credit on account of a foreign corporation's distribution of earnings from prior years. The distribution here involved was from earnings in the current tax year. It was the provision in the Revenue Act of 1918 which Sec. 238(e) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 259, was intended, in part, to amend; and Sec. 238(e) of the Revenue Act of 1926, with which we are now concerned, is in all material respects the same as Sec. 238(e) of the Revenue Act of 1921.

The mere fact that an amendatory statute produces no actual change in the statute amended, of course, furnishes no reason for not giving effect to the amendment as written. The requirements of the words of a statute are not to be read out of it by judicial interpretation. United States v. Felt & Tarrant Manufacturing Company, 283 U.S. 269, 273, 51 S.Ct. 376, 75 L.Ed. 1025. But at the same time, it is also to be borne in mind that legislative in-

tent is to be gained from a view of every material part of a statute. Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379. And a court will adopt that construction which gives effect to all parts of a statute to the end that the manifest purpose of Congress will not be obstructed. United States v. Troy, 293 U.S. 58, 62, 55 S.Ct. 23, 79 L.Ed. 197.

The defendant urges that the intent of Sec. 238(e) of the Revenue Act of 1921 was to enable parent corporations, through dividends from foreign subsidiaries, to bring in the subsidiaries' undistributed earnings of prior years and thus obtain a tax credit on account of the foreign income taxes paid thereon. Such, indeed, was a purpose of the section in further part not here material. But, the argument fails to supply the reason why Congress, in 1921, prescribed a new formula for ascertaining the foreign credit and defined accumulated dividends. If the intent was merely to carry forward the credit formula which had been prescribed by the Revenue Act of 1918, Congress could have readily accomplished that by continuing the simple formula of the 1918 statute and still have included the later provision of Sec. 238(e) which accords the right to credit on account of dividends from undistributed earnings of prior years. Likewise, the over-credit which was possible under the 1918 provision, in cases where the foreign tax rate on corporate income exceeded the domestic rate, could have been effectively obviated by a proviso like that actually inserted in Sec. 238(e) of the Act of 1921 to which we shall later refer. The credit formula in the 1921 Revenue Act was new. Whether it worked a change of prior law is the question of importance. If it did, then, necessarily, the defendant's present contention falls, for the defendant's ultimate formula under Sec. 238(e) of the Revenue Act of 1926 is substantially the formula of the 1918 Act.

 The principal purpose of the "foreign tax credit" in the Revenue Acts was to avoid double taxation. In Burnet v. Chicago Portrait Co., 285 U.S. 1, 7, 52 S.Ct.

275, 277, 76 L.Ed. 587, Mr. Chief Justice Hughes, speaking with respect to Sec. 238 (e) of the Act of 1921, said that "the primary design of the provision was to mitigate the evil of double taxation." While Sec. 240(c) of the Act of 1918 was also of like purpose, it had accomplished it only in part. This is evident for, as the total dividends received by a domestic parent corporation can never be as great as its foreign subsidiary's total net income in respect whereof foreign taxes are levied and paid, the credit under the 1918 formula, even when all of the subsidiary's distributable net income is distributed to the parent, could never equal the foreign taxes paid on total net income. The ratio of the allowable credit to the foreign taxes was as dividends received were to total net income. And, pro tanto, the same thing was no less true under the 1918 Act, when the dividend distribution was less than the total distributable net income. In any case, a portion of the total income goes out in payment of the taxes on the whole and is never available for dividend distribution.

The legislative history of the 1921 amendment (Sec. 238(e)) indicates that it was intended to change the 1918 foreign tax credit formula. The amendment was first introduced into the 1921 revenue bill by way of an amendment offered from the floor of the Senate. In response to a request for information as to the formula, Senator Smoot, a member of the Finance Committee, read from a prepared explanation which contained an illustration by figures as to the operation of the amendatory provision in practice. See Cong. Record, Vol. 61, Part 7, p. 7184. What the illustration plainly showed[1] was that the tax credit was to be ascertained by multiplying the subsidiary's total foreign income and profits taxes by a fraction whereof dividends received by the domestic parent was to be the numerator and the accumulated profits of the subsidiary the denominator. It was only by such a formula that double taxation could be completely avoided. The House accepted the Senate amendment (House Conference Rep. 486, 67th Cong.

---

[1] The illustration given to the Senate was as follows:

"Mr. Smoot. * * * The explanation of the amendment continues:

"Assume that the foreign corporation accumulated a surplus of $200,000 upon which it has paid income and profits taxes of $80,000, leaving $120,000 of disposable or distributable surplus. As-

sume further that it actually pays dividends to the American parent company of $50,000, i. e., of five-twelfths of its disposable surplus. Then the American parent company may take credit for five-twelfths of the $80,000 taxes which the foreign subsidiary paid, i. e., it may take a credit for $33,333.33." Cong. Record, Vol. 61, Part 7, p. 7184.

1st Sess., p. 38) which thus became a part of the Act. In the face of the illustration read in explanation of the bill, while in the Senate, and so recorded, there can be little room for doubt as to what Congress actually understood the formula to mean at the time of the adoption of Sec. 238(e) of the Revenue Act of 1921. Nor is the force of the written explanation lessened by the fact that Senator Smoot interpolated some extemporaneous observations which obviously overlooked some of the other important changes in existing law made by the amendment.

 For nine years (1921-1930) succeeding the original enactment of Sec. 238(e) the Treasury administered the provision on the basis that the foreign tax credit was to be ascertained by multiplying the subsidiary's total foreign income tax by the ratio of dividends received to accumulated profits just as the Senate illustration had shown. Article 612 of Treasury Regulations 62, promulgated under the Revenue Act of 1921, after reiterating substantially the provisions of Sec. 238(e), provided that a claim for the foreign tax credit should be made on Form 1118. The information thereby required and the method therein prescribed for calculating the tax credit clearly indicated[2] that the amount of the foreign tax payment available for credit to the domestic corporation was the same proportion of the total foreign income taxes which the dividends received by the domestic corporation bore to the accumulated profits. Subsequent regulations (Art. 612 of Regulations 65, under the Revenue Act of 1924, Art. 612 of Regulations 69, under the Revenue Act of 1926, and Art. 698 of Regulations 74, under the

Revenue Act of 1928) all similarly prescribed the use of Form 1118, in character as above described, for claiming the foreign tax credit. Of course, neither Treasury Regulations nor administrative practice are determinative of the Law. Janney et ux. v. Commissioner, 3 Cir., 108 F.2d 564, 567, affirmed, Helvering v. Janney, 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. 118, 131 A.L.R. 980. But, they take on significance when Congress, during the period in which they obtain, reenacts the statutory provision, so interpreted, without making substantial change therein. That is precisely what occurred with respect to Sec. 238(e) of the Revenue Act of 1921 upon three separate occasions.[3] So that what the Treasury had uniformly evidenced as being its understanding of the meaning of Sec. 238(e), Congress impliedly confirmed as being correctly interpretative of the legislative intent. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Hassett v. Welch et al., Executors, 303 U.S. 303, 312, 58 S.Ct. 559, 82 L.Ed. 858; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 293, 294, 55 S.Ct. 158, 79 L.Ed. 367; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S. Ct. 435, 77 L.Ed. 893.

 Nor is the implied Congressional approval of the administrative practice to be disregarded, as the defendant suggests, merely because the Commissioner in 1930 changed Form 1118 and the Treasury in 1933 promulgated new regulations (No. 77 under Revenue Act of 1932) which changed the former requirement with respect to the use of Form 1118, following which the statutory provision was again reenacted without substantial change. What-

---

[2] Form 1118 required information and directed the computation of the foreign tax credit as follows:

"1. Amount received during the taxable year as dividends from such controlled foreign corporation * * * $——
Date of payment of dividends . . . . .

"2. Accumulated profits out of which dividends were paid and which were included in net income on which taxes were based * * * Total $——

"3. Periods of accruals of tax payments on above profits
. . . . .

"4. Amount of tax payments (evi-

denced by attached receipts) or taxes accrued, * * *
Total $——

"5. Ratio of the amount of dividends received to accumulated profits * * * $——

"6. That amount of tax payments which are deemed to have been paid on profits distributed as dividends (total of Item 4 expressed in dollars multiplied by Item 5) * * * $——"

[3] Sec. 238(e) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 43.
Sec. 238(e) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 189.
Sec. 131(f) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 395.

ever validity and effect the change in administrative enforcement of the tax credit provision may have had, and has, prospectively, it cannot operate retroactively and particularly not in view of the earlier well established administrative practice and the implied Congressional approval which that practice had recurrently received. What the Supreme Court said in Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 117, 59 S.Ct. 423, 427, 83 L.Ed. 536, is peculiarly apposite in this connection: "It may be that by the passage of the Revenue Act of 1936 [26 U.S.C.A. Int.Rev.Acts, page 813 et seq.] [here the reenactments after 1932] the Treasury was authorized thereafter to apply the regulation in its amended form. But we have no occasion to decide this question since we are of opinion that the reenactment of the section, without more, does not amount to sanction of *retroactive* enforcement of the amendment, *in the teeth of the former regulation which received Congressional approval* by the passage of successive Revenue Acts including that of 1928." (Emphasis supplied.) Cf. Helvering v. Wilshire Oil Co., Inc., 308 U.S. 90, 100, 60 S.Ct. 18, 84 L. Ed. 101. The opinions of general counsel for the Bureau of Internal Revenue upon which the defendant relies for the retroactive enforcement of the new regulation were merely advisory. In no sense did they constitute rules or regulations having the force of statutes. See Helvering v. New York Trust Co., 292 U.S. 455, 467, 468, 54 S.Ct. 806, 78 L.Ed. 1361; Higgins v. Commissioner, 312 U.S. 212, 215, 61 S. Ct. 475, 85 L.Ed. 783.

While the question with which we are here concerned was neither raised nor directly passed upon in Burnet v. Chicago Portrait Co., supra, the formula which the plaintiff advances in the instant case was inherent in the Supreme Court's decision in that case. The question there was whether New South Wales was a foreign country for whose income taxes (against a subsidiary corporation) credit could be claimed by the domestic parent corporation under Sec. 238(e) of the Revenue Act of 1921. The credit there claimed, which the Commissioner had disallowed, was approved by the Board of Tax Appeals with directions that the parties submit computations of the tax on the basis of the reinstated credit. Thereupon, the Commissioner submitted a computation calculating the tax credit according to the same formula now advocated by the plaintiff in the instant case. The Board entered a decision accordingly, which, upon review, was affirmed by the Circuit Court of Appeals for the Seventh Circuit (50 F.2d 683) and later by the Supreme Court on certiorari (285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587). The tax credit which the Supreme Court thus authenticated was the statutorily prescribed proportion of the subsidiary's total taxes on its net income and profits for the year and not merely of the relative portion of such taxes attributable to the income remaining after payment of the taxes on the total net income and profits. It is of further significance that the question which the defendant now urges was not raised in the Chicago Portrait case notwithstanding that case did not come on for argument before the Supreme Court for almost a year and a half after the Commissioner had made the change in Form 1118 in August 1930, which, according to the defendant's present contention, marked the change in the Treasury's administration of the credit provision. Yet, the tax was computed there and sustained on the basis of the old formula.

Also, in F. W. Woolworth Co. v. United States, 2 Cir., 91 F.2d 973, 977, the tax credit allowed was figured on the total foreign income and profits taxes paid by the subsidiary. The defendant points out that the question there involved was as to what taxes were to be deducted from the foreign subsidiary's total profits in determining the accumulated profits, i. e., the denominator of the credit fraction. It is true that nothing was said in the Woolworth case as to the multiplicand but the court did say that all of the distributable net income having been distributed and the only taxes paid by the foreign subsidiary having been income and profits taxes, the proportion of dividends to "accumulated profits" was as "one to one". In its cross-petition for certiorari in that case, the defendant stated that the credit allowed by the District Court, 15 F.Supp. 679, and affirmed by the Court of Appeals was "for the entire amount [of foreign income taxes] paid each year" by the foreign subsidiary. Also, according to the defendant's cross-petition, the only question therein presented for the Supreme Court's consideration was whether the allowable foreign tax credit "shall be limited to that portion of such taxes which are applicable to the 'accumulated profits' of the

foreign subsidiary * * *." But certiorari was denied, 302 U.S. 768, 58 S.Ct. 479, 82 L.Ed. 597.

In International Milling Company v. United States, Ct.Cl., 27 F.Supp. 592, where the question was as to the allowable foreign tax credit under Sec. 131(f) of the Revenue Act of 1928 (the counterpart of Sec. 238(e) of the Revenue Act of 1926), the Court of Claims disapproved the tax credit formula for which the defendant here contends but did approve the formula which the learned court below followed in the instant case. The Court of Claims observed (27 F.Supp. page 596) that "Instead of taking the ratio of the dividends received to accumulated profits, as directed by the statute, the Commissioner used, as shown above, the ratio of dividends received to the *total* profits of the subsidiary." The latter, as we have seen, was the formula under the 1918 Act. With respect thereto, the Court of Claims then concluded (27 F.Supp. page 597) "that Congress with the 1918 act before it deliberately decided to prescribe a different method as explained by Senator Smoot in the manner shown * * *, otherwise it would have simply retained the 1918 form."[4]

In support of its contention, the defendant cites an unreported decision of the Board of Tax Appeals in Eastern Steamship Lines, Inc., v. Commissioner of Internal Revenue, Docket Nos. 74888 and 75187. An examination of that decision fails to disclose that any consideration was given to the legislative history, the administrative interpretation, the implied Congressional approval or the decisions to which we have made reference.

 Finally, the defendant contends that the formula adopted by the court below will produce an over-credit (by relieving domestically earned income from domestic tax) where the foreign tax rate on income distributed by a subsidiary as dividends is higher than the domestic tax on corporate income. This contention is wholly untenable. Congress very effectively obviated any possibility of over-credit when it prescribed (Sec. 238(e) of the Revenue Act of 1921 and all subsequent reenactments thereof) "That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included."

It follows from what we have herein said that the learned court below correctly applied the tax credit provision of Sec. 238(e) of the Revenue Act of 1926 to the undisputed facts of this case. The judgment for the plaintiff, is, therefore, affirmed.

---

4 It is an interesting coincidence that Judge Green, who wrote the opinion for the majority in the International Milling Company case, supra, was a member of the House Ways and Means Committee at the time of the adoption of Sec. 238(e) as a part of the Revenue Act of 1921, as well as a member of the Conference Committee which composed the differences between the two Houses with respect to the Bill, when the House Conferees accepted the Senate amendment of Sec. 238(e) as offered and explained by Senator Smoot from the floor. Judge Green was also chairman of the House Ways and Means Committee when Sec. 238(e) was later enacted without substantial change.