**U. S. TRUCK SALES CO., a Corporation, Plaintiff,**

v.

**UNITED STATES, Defendant.**
**No. 29956.**

United States District Court,
N. D. Ohio, E. D.
Jan. 11, 1955.

A. P. Annan, Cleveland, Ohio, for plaintiff.

David Cobb, Washington, D. C., Sumnar Canary, U. S. Dist. Atty., Cleveland, Ohio, for defendant.

FREED, District Judge.

The question raised by the cross-motions for summary judgment is whether Section 3403 of the Internal Revenue Code of 1939 authorizes the imposition of an excise tax on the first sale in this country of domestically manufactured trucks by one who purchased them from United States military surplus in Europe. The trucks were originally sold to the Government tax-free,[1] and were used by the Government in European military operations. Inherent in the question is whether the original tax-free sale to the United States was tantamount to a tax-paid sale, thus foreclosing the taxability of all subsequent sales.

The plaintiff has paid the sum of $494.82 to the Collector's Office, Eighteenth Collection District, Cleveland, Ohio, on account of and in one-quarter payment of a tax assessment of $1,979.28 upon sales of trucks and truck parts by the plaintiff, W. J. Lutes, Edward Udelson, and Saul Shenk, acting in a joint venture. Notice and demand for the said tax in amount of $1,979.28, exclusive of interest, was made upon the four members of the joint venture by the Collector of Internal Revenue at Cleveland on August 15, 1952. The plaintiff paid its $494.82 on account of said tax to the Collector's Office on August 25, 1952, and filed its claim for refund therefor on August 26, 1952. In accordance with Section 3772(a) (2) of the Internal Revenue Code, notice of disallowance was given to the plaintiff by the Director, Office of Director of Internal Revenue, Cleveland, Ohio, under date of December 23, 1952. The tax involved in this action was not included in the selling prices plaintiff received for the trucks or truck parts, and the plaintiff has not collected such tax from any of its vendees. Recovery of the tax paid by plaintiff is sought in this action.

The core of the controversy between the plaintiff and the Government centers in the opposite views taken by the parties in respect of the validity of two rulings issued by the Internal Revenue Service.

S.T. 867[2] is to the effect that:

"The resale * * * by a manufacturer or producer of a motorcycle originally sold tax-free and subsequently accepted as a trade-in on a new motorcycle is not taxable under Section 606(b) of the Revenue Act of 1932 unless prior to such

1. Section 3442(3) of the Internal Revenue Code of 1939 exempted from the tax sales for the exclusive use of the United States, any state, territory of the United States, or any political subdivision of the foregoing, or the District of Columbia.

By the Act of February 25, 1944 c. 63, Title III, § 307(a) (5), 58 Stat. 65, "the United States" was stricken from the statute.

2. 1937-2 Cum.Bull. 505.

resale * * * the motorcycle was so altered or rebuilt as to lose its identity.

S.T. 938[3] reads in part:

"* * * the sale in the United States by the importer of any of the articles named in Subchapter A of Chapter 29 of the Code, which had previously been shipped out of the United States tax-free * * *, constitutes a taxable sale of the articles with respect to which the importer is liable for tax * * *.

"Accordingly the importer of the aforementioned articles is liable for the tax on the sale thereof unless he is able to establish to the satisfaction of the Bureau that the tax was paid to the Government on the original sale of the articles by the manufacturer and that no claim for credit or refund has been allowed in the amount of the original tax payment, or that the manufacturer did not claim exemption from the tax which was otherwise due as a liability of the manufacturer, even though for some reason other than exemption, the tax may not have been paid by the manufacturer."

The plaintiff contends that S.T. 938 is unlawful and unauthorized and that the tax levied against it was wrongfully assessed for the following reasons: that Section 3403 of the Internal Revenue Code of 1939 imposes a tax only on the first sale of an article in the United States; that S.T. 938 unlawfully and arbitrarily attempts to tax the sale of trucks of United States manufacture which were originally sold tax-free when sold by the importer, but not when resold by the manufacturer; that Sections 2705 and 3449 of the Internal Revenue Code of 1939[4] exempt from taxation articles covered by Section 3403 when they are sold for export, and that such an exemption forever forecloses any fur-

ther assessment of the excise tax; that the statute and regulation[5] which exempted the original sale by the manufacturer to the Government require the manufacturer, not the plaintiff, to pay the tax if the article is used other than for the exclusive use of the United States or is resold; that the application of S. T. 938 violates Section 1108(b) of the Internal Revenue Act of 1926, 26 U.S.C. A.Int.Rev.Acts, page 319, in that Section 1108(b) provides that no tax can be levied when at the time of the sale there was in existence a ruling holding the sale not taxable; and that during the fourteen-year life of S.T. 867 Congress repeatedly re-enacted the excise tax on trucks in substantially the same form giving S.T. 867 the force and effect of law.

The Government denies that the first sale in this country of a domestically manufactured truck forecloses any subsequent taxability and further asserts that S.T. 867 and 938 are not inconsistent because not only do they differ factually but that one applies to manufacturers and producers while the other applies to importers.

Section 3403 of the Internal Revenue Code reads in part:

"There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold:

"(a) Automobile truck chassis, automobile truck bodies * * *."

The comprehensive language of the statute clearly imposes a tax on all sales of the included articles by a manufacturer, producer or importer unless there is some specific exemption authorized by statute, regulation or judicial construction.

The exemptions granted either by statute or regulation are not applicable

---

3. 1951–2 Cum.Bull. 213.

4. Section 2705 provides that the tax imposed under Section 2700(a) shall not apply to articles sold or leased for export.

Section 3449 makes that exemption applicable to the taxes imposed by Section 3403.

5. U. S. Treasury Regulation 46, § 316.24.

to the instant factual situation. The only controlling judicial construction is found in Indian Motorcycle Co. v. United States, 1931, 283 U.S. 570, 51 S.Ct. 601, 602, 75 L.Ed. 1277. The statute involved in that controversy was the predecessor to Section 3403. It did not exempt from the tax sales to political subdivisions of a state. The problem which confronted the Court was whether the tax could be constitutionally levied on the sale of a motorcycle by the manufacturer to a municipal corporation when the motorcycle was to be used in the police service of the city. In discussing the nature of the tax Mr. Justice Van Devanter speaking for the majority said: "It is not laid on all sales, but only on first or initial sales—those by the manufacturer, producer or importer. Subsequent sales, as where purchasers at first sales resell, are not taxed."

In the quoted portion of the opinion the plaintiff seeks sweeping authority for its contention that the statute authorizes the imposition of the tax only on the first sale in the United States and that under no circumstances can subsequent sales be taxed.

The first sale in this country does not invariably foreclose the taxability of a resale. Assume for example that trucks of domestic manufacture were sold for export to someone other than the Government. This first sale in the United States would be tax-free by virtue of Sections 2705 and 3449 of the Internal Revenue Code of 1939.[6] Assume further that at some later time the trucks were purchased in the country to which they had been exported by one who subsequently returned them and then sold them in the United States. Such last sale would most certainly be taxable under Section 3403. To hold otherwise would defeat the plain intent of Congress and offer to manufacturers a ready method of tax avoidance.

Once it has been established that a first sale in this country does not extinguish the possibility of a tax on a subsequent sale, the next inquiry must be whether, under the facts presented, the plaintiff is subject to the tax.

We are immediately confronted with the proposition that under no theory or construction of the statute could the sale of these trucks be subjected to the tax if the Government had returned them to this country and sold them to plaintiff or others. That no tax could be levied on the sale by the Government in this country is apparent. It is likewise apparent that all sales in this country subsequent to the Government's sale would be tax-free because the seller would be other than a manufacturer, producer or importer within the purview of Section 3403. It might appear to be unjust to allow the tax measure to be administered in such a manner that the happenstance of someone other than the Government returning the trucks to this country would determine taxability. On careful reflection is it unjust? If a corporation organized under the laws of France, instead of a domestic corporation such as plaintiff, had purchased the trucks in question there could be no doubt that the first sale in the United States would fall within the "importer" provision of Section 3403. Under the comprehensive language of the statute no distinction can possibly be drawn between a sale in this country by a foreign corporation and a sale by a domestic corporation.

No worthwhile result would be accomplished from a lengthy discussion over semantics. The meaning of the word importer is clear. The statute declares that the tax is to be levied on the sale of trucks by an importer. The plaintiff purchased the trucks here in controversy in Europe, transported them to this country and sold them here. It must be clear that in purchasing these trucks in Europe and arranging for their transportation to this country the plaintiff was engaged in foreign commerce. Whether it can be said that the Government exported these trucks when it

6. See footnote 4, supra. . . .

transported them overseas for use by our military forces in Europe is of no moment. It remains that the trucks were in Europe and were purchased there by the plaintiff. The only method by which these trucks could reach the United States was through the process of importation. Thus, what was the capacity of the plaintiff other than that of an importer?

The plaintiff points out that within the purview of S.T. 867 and S.T. 938 domestically manufactured trucks originally sold tax-free are not subject to the tax on a resale by the manufacturer whereas they are subject to the tax when sold by the importer. Plaintiff argues that such a construction is not authorized by Section 3403. The manufacturers resale is not tax-free by virtue of any discretionary dispensation granted by the Commissioner as contended by plaintiff, but because the manufacturer, when it resells, does not come within the ambit of the statute. The party who sells, after purchasing from the manufacturer, does so in a capacity other than that of a manufacturer or producer. On the other hand, one who imports the trucks and sells them clearly must fall within the classification of an importer. Should the original manufacturer import the trucks and sell them, that sale would be taxable, not because the original sale was tax-free, not because the seller was the original manufacturer, but because the seller was an importer.

Granting arguendo that the United States Government was engaged in the exporting business, it does not follow, as pointed out before, that when the trucks were returned to this country by an importer, the sales of the trucks here would escape taxation because the first sales to the United States were for export. If that were true the mere shipment across the border and subsequent shipment back to the United States would foreclose the imposition of the tax.

Much has been said by plaintiff concerning Section 3442(3) and Regulation 46, Section 316.24 promulgated thereunder which exempted from the tax the original sale by the manufacturer to the Government. By virtue of the statute no tax could be imposed on a sale of trucks for the exclusive use of the United States. The regulation required that to qualify for the exemption the manufacturer must have had definite knowledge, prior to, or at the time of the sale that the article was to be used for the exclusive use of the United States and also that the manufacturer must secure from an authorized officer of the United States an exemption certificate. This certificate contains an agreement that if the articles are used otherwise than for the exclusive use of the United States or resold, the responsible officer of the Government shall notify the manufacturer who shall then pay the tax. The plaintiff argues that the tax on the manufacturer's original sale was due when the United States disposed of the trucks. This sale, the plaintiff contends, violated the exclusive use provision of the statute, the regulation and the exemption certificate and the Government, because it failed to notify the manufacturer of the sale, is estopped to collect the tax from subsequent sellers. These subsequent sellers, plaintiff urges, were the intended beneficiaries of the Government's duty to collect the tax from the manufacturer.

What formula should be used to measure the limits of the term "exclusive use"? Must the manufacturer forever stand ready to respond to the ultimate disposition of the trucks? Most assuredly Congress intended to give the phrase its natural and accepted meaning. It has been stipulated that the trucks were used and in a worn condition when purchased by the plaintiff. It has also been stipulated that these trucks were in the possession of the Government for a period of at least six and a half years. On these facts there can be no question but that they were sold for the exclusive use of the United States within the meaning of Section 3442(3). This being true the Government would have no right to impose the tax upon the original manufacturer at this time and it must neces-

sarily follow that the line of argument taken by the plaintiff cannot withstand scrutiny.

The plaintiff urges that Section 1108 (b) of the Revenue Act of 1926 should prevent the Government from imposing the tax here in dispute. That section provided that no tax could be assessed or collected on any article sold if there was existing at the time of the sale a ruling, regulation or treasury decision holding that the sale was not taxable and the seller relied thereupon. The plaintiff's position finds no support in the section cited. Section 4 of the Internal Revenue Act of 1939, 26 U.S.C.A. preceding section 1, repealed all laws to the extent that they related exclusively to internal revenue. Assuredly, when repealed, it is no longer effective. Moreover, S.T. 867 on which plaintiff claims it relied deals only with manufacturers and producers and makes no reference whatsoever to importers. Thus no problem of retroactive application is presented.

 It is argued that the Bureau of Internal Revenue has consistently followed S.T. 867 by not taxing sales of secondhand and used trucks of United States manufacture and that during the fourteen-year life of S.T. 867 Congress has repeatedly re-enacted the federal excise tax on trucks, thus giving that interpretation the force and effect of law. There can be little doubt that regulations promulgated by the Commissioner which have "long continued without substantial change, applying to unamended or substantially re-enacted statutes, are deemed to have received congressional approval and have the effect of law." [7] Can it be

said, however, that a taxpayer's ruling should be viewed in the same light as a regulation? While the precise question has not been squarely decided by the Supreme Court, nevertheless, there are clear indications in the opinions to the effect that these taxpayer's rulings cannot commit the United States to any interpretation of the law in the absence of challenge by the Government in the courts.[8] In no event may the Government be prevented from collecting taxes rightly due because of the character of the interpretations of statutes here in dispute which do not fall into the category of regulations.

It should be noted and again emphasized that S.T. 867 relates only to manufacturers and producers and nowhere refers to importers.

The Government's position with reference to the imposition of the instant tax is entirely consistent with the view expressed by the Supreme Court in the Indian Motorcycle case. Tersely stated, the opinion in that case is to the effect that manufacturers, producers and importers shall be taxed on their first sale only. They shall not be taxed should they acquire back and resell the same trucks.

 What more can be said other than that the sales involved in this controversy were the first sales in this country by an importer and that the plaintiff has not been subjected to double taxation?

For the foregoing reasons the motion of the United States for summary judgment is sustained and the plaintiff's cross-motion is overruled.

7. Helvering v. Winmill, 1938, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301; Boehm v. Commissioner, 1945, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78; Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S. Ct. 423, 83 L.Ed. 536.

8. See, Higgins v. Commissioner, 1941, 312 U.S. 212, 215, 61 S.Ct. 475, 85 L.Ed. 783; Helvering v. New York Trust Co., 1934,

292 U.S. 455, 468, 54 S.Ct. 806, 78 L. Ed. 1361; Aluminum Co. of America v. United States, 3 Cir., 1941, 123 F.2d 615, 621; Couzens v. Commissioner, Tax Court Digest, Regulations § 2 (1928). The Court is not unmindful of the decision in Woodworth v. Kales, 6 Cir., 1928, 26 F. 2d 178, however, the controlling facts of that decision so radically differ from those presented by the instant case that the Woodworth decision is not in point.